## GOGGIN, TRUSTEE IN BANKRUPTCY, *v.* DIVISION OF LABOR LAW ENFORCEMENT OF CALIFORNIA.

No. 35. Argued November 15, 1948.—Decided January 31, 1949.

*Martin Gendel* argued the cause and filed a brief for petitioner.

By special leave of Court, *Robert W. Ginnane* argued the cause for the United States, as *amicus curiae,* urging reversal. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Caudle* and *A. F. Prescott.*

*Edward M. Belasco* argued the cause for respondent. With him on the brief were *Fred M. Howser,* Attorney General of California, and *Frank W. Richards,* Deputy Attorney General.

MR. JUSTICE BURTON delivered the opinion of the Court.

This case deals with the question whether § 67c of the Bankruptcy Act,[1] in determining priorities in the payment of claims, speaks as of the time of filing the petition

---

[1] As § 67b is referred to in § 67c and is material to its interpretation, both subdivisions of § 67 are quoted below:

"SEC. 67. LIENS AND FRAUDULENT TRANSFERS.— . . .

"b. The provisions of section 60 of this Act to the contrary notwithstanding, statutory liens in favor of employees, contractors, mechanics, landlords, or other classes of persons, and statutory liens for taxes and debts owing to the United States or any State or subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition in bankruptcy or of the original petition under chapter X, XI, XII, or XIII of this Act, by or against him. Where by such laws such liens are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws, except that if such

in bankruptcy. The precise issue presented is whether a tax claim of the United States, secured by a lien perfected before the bankruptcy of the taxpayer and accompanied, at the time of the filing of the petition in bankruptcy, by the Collector of Internal Revenue's actual possession of the bankrupt's personal property, is required by § 67c of the Bankruptcy Act to be postponed in payment to debts owed by the bankrupt for wages to claimants specified in clause (2) of § 64a of that Act,[2] because the Col-

laws require the liens to be perfected by the seizure of property, they shall instead be perfected by filing notice thereof with the court.

"c. *Where not enforced by sale before the filing of a petition in bankruptcy* or of an original petition under chapter X, XI, XII, or XIII of this Act, *though valid under subdivision b of this section, statutory liens, including liens for taxes or debts owing to the United States* or to any State or subdivision thereof, *on personal property not accompanied by possession of such property,* and liens whether statutory or not, of distress for rent *shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this Act,* and, except as against other liens, such liens for wages or for rent shall be restricted in the amount of their payment to the same extent as provided for wages and rent respectively in subdivision a of section 64 of this Act." (Italics supplied.)

. . . . .

Bankruptcy Act of 1898, c. 541, 30 Stat. 544, 564, as amended by the Chandler Act of June 22, 1938, c. 575, 52 Stat. 840, 875–877, 11 U. S. C. § 107 (b) and (c).

[2] Not only the portions of § 64a specifying the wages here in controversy but those otherwise related to the issues of this case are quoted below:

"SEC. 64. DEBTS WHICH HAVE PRIORITY.—a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be *(1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition;* the fees for the referees' salary fund and for the referees' expense fund; the filing fees paid by creditors in involuntary cases; where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the

lector later relinquished possession of such property to the trustee of the bankrupt's estate for sale by him. We hold that the lien was valid and entitled to priority of payment as against the wage claims at the date of bankruptcy and that the Collector's relinquishment of possession of the bankrupt's property did not change the result.

The facts are undisputed. Before March 26, 1946, a Collector of Internal Revenue of the United States per-

---

bankrupt by the efforts and at the cost and expense of one or more creditors, the reasonable costs and expenses of such recovery; *the costs and expenses of administration,* including the trustee's expenses in opposing the bankrupt's discharge, the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases and to the bankrupt in voluntary and involuntary cases, as the court may allow; (2) *wages,* not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, *due to workmen, servants, clerks, or traveling or city salesmen* on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; . . . (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: *Provided,* That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court: *And provided further,* That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court; and (5) debts owing to any person, including the United States, who by the laws of the United States in [is] entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law: *Provided, however,* That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy." (Italics supplied.)

. . . . .

Bankruptcy Act of 1898, c. 541, 30 Stat. 544, 563, as amended by the Chandler Act of June 22, 1938, c. 575, 52 Stat. 840, 874, and 60 Stat. 323, 330, 11 U. S. C. § 104 (a).

fected a statutory lien upon the personal property of the Kessco Engineering Corporation, a California corporation, and took actual possession of such property pursuant to that lien. He attempted to sell such assets and received bids for them but did not complete the sale because the price obtainable was unsatisfactory to him. He instituted a second sale but abandoned it when he relinquished possession of the property to the trustee of the bankrupt's estate. On March 26, 1946, the corporation filed its voluntary petition in bankruptcy in the United States District Court for the Southern District of California, was adjudicated a bankrupt and George T. Goggin (who later became the trustee of the bankrupt's estate and is the petitioner herein) was appointed receiver. Having qualified as receiver on March 28, 1946, he communicated with counsel for the Collector as to the Collector's turning over to him the bankrupt's personal property. In this connection, the referee in bankruptcy later made a finding of fact which was adopted by the District Court and is as follows:

". . . the personal property of the bankrupt in the hands of the Collector of Internal Revenue, . . . was turned over to the said George T. Goggin, who accepted the terms and conditions of a telegram from J. P. Wenchel, Chief Counsel of the Bureau of Internal Revenue, reading as follows:

" 'Reference to telephone conversation today with Mr. Webb [member of the Los Angeles office of Internal Revenue] relative to Kessco Engineering Corporation, Bankrupt, no objection by this office to Collector relinquishing personal property to Trustee for sale. Government's lien to attach to proceeds from sale subject to Trustee's expenses including costs of sale.
J. P. Wenchel, Chief Counsel.' "

Goggin, in his final capacity as trustee for the bankrupt, caused these assets to be sold at public auction, pursuant to order of court. Having liquidated all assets which had come into his possession, he had on hand, on December 12, 1946, about $31,206.20, which the referee certified was insufficient to pay in full the expenses of administration, the lien claims, the prior labor claims and prior tax claims in the case. The gross amount of the amended claim of the Collector for taxes, penalties and interest was $78,865.03. The prior wage claims totaled $3,424.87. The Department of Employment of the State of California also filed a tax claim for $15,135, which was recorded as a lien on or about December 24, 1945. Neither the validity nor the amount of any of these claims is in issue here.[3]

The present proceeding originated in a petition filed with the referee in bankruptcy by the trustee, seeking an order to show cause why the order of priority of the payment of the tax and prior wage claims and the expenses of administration should not be determined by the District Court. The referee made findings of fact and reached conclusions of law upon the basis of which he ordered that, from the monies in the possession of the trustee,

[3] There is no issue here as to the amount of penalties or interest included in the Collector's claim for taxes or as to the date to which interest on such claim shall be computed. There is no issue here as to any difference between statutory liens which were perfected more than four months before the filing of the petition in bankruptcy or those perfected within less than that time. As the lien claimed by the United States exceeds the funds available, it has filed its brief in this Court as the sole real party in interest and in opposition to the wage claims. The respondent, Division of Labor Law Enforcement of the State of California, appears on behalf of all of the labor claimants. There also is no issue here as to the amount to be paid for the expenses of administration or the items which such expenses may include in addition to the costs of the sale made by the trustee.

there first be paid the expenses of administration and that the balance of such funds then in the hands of the trustee be paid to the Collector of Internal Revenue in partial payment of the Government's tax claims and the interest thereon as prescribed by law.[4] The District Court adopted the findings of fact and conclusions of law of the referee and entered judgment thereon. The Court of Appeals for the Ninth Circuit reversed that judgment and held that, by virtue of the Collector's relinquishment of his possession of the personal property of the bankrupt, the taxes due to the United States must be postponed, in payment, to the debts of the bankrupt for certain wage claims, pursuant to § 67c of the Bankruptcy Act. 165 F. 2d 155. Because of the importance of the issue in the administration of the Bankruptcy Act, we granted certiorari. 333 U. S. 860.

The bankrupt filed its petition and was adjudicated a bankrupt on March 26, 1946. The personal property of the bankrupt was then subject to the perfected statutory lien of the United States for taxes and that lien was accompanied by the actual physical possession of the property by a Collector of Internal Revenue on behalf of the United States. Those facts completely satisfy § 67c of the Bankruptcy Act.[5] Subsequent events, such as the relinquishment of his possession by the Collector in favor of the trustee of the bankrupt's estate for the purpose of facilitating a sale of the property by the trustee, are not material to the determination of the

---

[4] Provision, not material here, was made that, if additional money came into the possession of the trustee, the court, upon notice to all necessary and proper parties, should determine the respective liens or priorities, if any there be, of the Collector of Internal Revenue, the prior labor claimants, the Department of Employment of the State of California and other tax claimants entitled to be heard.

[5] See note 1, *supra*.

issue before us.[6] The terms under which the Collector's possession was relinquished are consistent with and support this result but the Government's right to payment ahead of the wage claims was determined at the time of bankruptcy and did not arise out of the arrangement under which possession was relinquished to the trustee.

This general point of view in interpreting the Bankruptcy Act is one of long standing. In *Everett* v. *Judson*, 228 U. S. 474, 479, this Court said:

"We think that the purpose of the law was to fix the line of cleavage with reference to the condition

---

[6] See *Davis* v. *City of New York*, 119 F. 2d 559. In that case the City perfected its lien for retail sales taxes by seizure of assets of the taxpayer, May 16, 1939. An involuntary petition in bankruptcy was filed, June 7, 1939, against the taxpayer and it was adjudicated a bankrupt, June 17, 1939. The assets were thereafter sold in execution of the warrant issued by the city treasurer. The levy was held to be a valid statutory levy as against the trustee of the bankrupt's estate and the City was allowed to retain the proceeds of the sale, under §§ 67b and 67c of the Bankruptcy Act, as amended in 1938. For a converse situation see *City of New York* v. *Hall*, 139 F. 2d 935. In that case the City perfected its lien on personal property of the taxpayer, arising out of long delinquent business and sales taxes, by the delivery of warrants on January 14, 1943, at 10:15 a. m., to the city's warrant agent for execution and levy on the property. The actual levy on, and inventory of, the property and the posting of notices of sale were not effected until shortly after 4:30 p. m. In the meantime, at 4:22 p. m., an involuntary petition in bankruptcy was filed against the taxpayer and upon this he was adjudicated a bankrupt. Pursuant to an order of the bankruptcy court, a receiver sold the property and the court declined to order the net proceeds to be turned over to the City. The City was the holder of a statutory lien but, at the time of the filing of the petition in bankruptcy, the lien was not accompanied by actual possession of the personal property to which it attached. It, therefore, was subordinated, under § 67c of the Bankruptcy Act, to the administration expenses and wages covered by clauses (1) and (2) of § 64a. "Notwithstanding the admonition of Section 67, sub. c, the City chose to slumber on its rights. Congress intended to penalize such somnolence." *Id.* at p. 936.

of the bankrupt estate as of the time at which the petition was filed and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition."

See also, *Myers* v. *Matley*, 318 U. S. 622, 626; *United States* v. *Marxen*, 307 U. S. 200, 207–208; *Acme Harvester Co.* v. *Beekman Lumber Co.*, 222 U. S. 300, 307.[7]

While § 67c was added to the Bankruptcy Act by the Chandler Act in 1938, we find nothing in it or in its legislative history to suggest an abandonment of the underlying point of view as to the time as of which it speaks and the general purpose of Congress to continue to safe-

---

[7] "SECTION 1. MEANING OF WORDS AND PHRASES.—The words and phrases used in this Act and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows:

.　　　　.　　　　.　　　　.　　　　.

"(13) 'Date of bankruptcy', 'time of bankruptcy', 'commencement of proceedings', or 'bankruptcy', with reference to time, shall mean the date when the petition was filed; . . . ." 30 Stat. 544, as amended by 52 Stat. 840–841.

". . . the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition in bankruptcy. This is true both as to the bankrupt and among themselves. The assets at that time are segregated for the benefit of creditors. The transfer of the assets to someone for application to 'the debts of the insolvent, as the rights and priorities of creditors may be made to appear' [citing *Bramwell* v. *U. S. Fidelity & Guaranty Co.*, 269 U. S. 483, 490], takes place as of that time." *United States* v. *Marxen*, 307 U. S. 200, 207–208.

"The general rule in bankruptcy is that the filing of the petition freezes the rights of all parties interested in the bankrupt estate. Exceptions only emphasize the rule. Whatever disagreement in opinion there may have been on the matter prior to the Act of 1938, it is now clear that statutory liens may be valid if they arise before bankruptcy although they are perfected after bankruptcy, if the perfection is within the time permitted by and in accordance with the requirements of applicable law." 4 Collier on Bankruptcy 228–229 (14th ed. 1942).

guard interests under liens perfected before bankruptcy. *City of Richmond* v. *Bird*, 249 U. S. 174; *In re Knox-Powell-Stockton Co.*, 100 F. 2d 979; *In re Van Winkle*, 49 F. Supp. 711. While § 64, as amended, somewhat readjusts priorities among unsecured claims, § 67 continues to recognize the validity of liens perfected before bankruptcy as against unsecured claims. Section 67b has clarified the validity of statutory liens, including those for taxes, even though arising or perfected while the debtor is insolvent and within four months of the filing of the petition in bankruptcy. It expressly recognizes that the validity of liens existing at the time of filing a petition in bankruptcy may be perfected under some circumstances after bankruptcy. Section 67c, as amended in 1938, does, however, introduce a new postponement in the payment of certain claims secured by liens to the payment of other claims specified in clauses (1) (for certain administrative expenses, etc.) and (2) (for certain wages) of § 64a. This subordination is, however, sharply limited. For example, it does not apply to statutory liens on real property, or to those actually enforced by sale before bankruptcy, or, in general, to liens on personal property when accompanied by actual possession of such property. The background of § 67c suggests a conscious purpose to give a narrowly limited priority to administrative expenses and to certain wage claims, at least in instances disclosing accumulations of unpaid taxes the priority of which wage earners had no good reason to suspect, and which might absorb the entire estate of the bankrupt unless postponed by these provisions.[8] The

---

[8] These provisions apparently originated in Amendments proposed by the National Bankruptcy Conference which were before Congress in a Committee Report Analysis of H. R. 12889, 74th Cong., 2d Sess. (1936). This report states that the bill was introduced by Mr. Chandler, May 28, 1936, containing Amendments proposed by the National Bankruptcy Conference, and the several Sections are ac-

128

purpose of § 67 in requiring a public warning of the exist-
ence of an enforceable statutory lien for taxes was served
in the instant case not only by the steps taken to perfect

companied by explanatory notes. Section 67c, as there proposed,
resembles substantially the Section as finally enacted. The note
explanatory of it, attributed to Jacob I. Weinstein, a member of the
Conference, includes the following statement:

"Section 64 [of the Bankruptcy Act before amendment by the
Chandler Act] is declaratory of a policy that the costs and expenses
in connection with a bankruptcy proceeding and its administration
shall be first paid in distribution. It is a sound policy and is in
accordance with the general principles well established in liquidation
proceedings. But Section 67 of the Act does not apply the same
limitation with respect to valid liens. The Supreme Court, in the
case of *City of Richmond* v. *Bird,* [249 U. S. 174,] 43 A. B. R. 260
(1919), resolved the conflict in the lower court decisions by holding
that the priority provisions of Section 64 do not apply to liens valid
under Section 67. . . .

"It is significant that in recent years state legislatures have been
enacting special legislation in favor of tax claims, public debts, and
a variety of private claims. Statistics in the bankruptcy cases show
that the effective administration of the bankruptcy law has seriously
suffered therefrom. Such claims, particularly tax liens, often con-
sume the entire estate, leaving nothing for the payment of the costs
and expenses of administration incurred in reducing the assets to cash.
In many such cases the tax liens represent an accumulation of de-
linquent items covering a long period of time, without any attempt
on the part of tax collectors to enforce payment prior to the bank-
ruptcy proceeding.

"There is therefore need for a provision to protect the administra-
tion costs and expenses; and similar considerations apply to wage
claims. Accordingly we have selected, from among the priorities
fixed by Section 64 (as revised), these particular items for protection.
However, by reason of the historical development and the inherent
differences existing in the incidents attaching to real and personal
property, it would seem advisable to restrict the remedy thus pro-
vided to liens on personal property, *where such liens have not been
enforced by sale prior to bankruptcy.*" (Italics supplied.) *Id.* at
p. 212 n. 1.

At that time the bill did not also except from subordination statu-
tory tax liens on personal property "accompanied by possession of

the Government's lien but by the Collector's seizure and actual possession of the personal property of the taxpayer before the filing of the taxpayer's petition in bankruptcy.

---

such property." The addition of that clause gives it special emphasis and suggests its appropriate effect as a warning to other claimants that the property, so possessed, will not be available in the first instance for the administrative expenses and wage claims specified in clauses (1) and (2) of § 64a.

The report filed by Mr. Chandler for the Committee on the Judiciary, July 29, 1937, to accompany the bill then known as H. R. 8046 merely stated: "In subdivisions b and c statutory liens are protected and permitted to be perfected if the time allowed by law for perfecting them has not expired." H. R. Rep. No. 1409, 75th Cong., 1st Sess. 34 (1937), and see references to §§ 64 and 67c on pp. 9, 15–16.

See also, Weinstein, The Bankruptcy Law of 1938 (1938):

"This subdivision is new and is designed to correct an inequitable condition which existed under the old Act, particularly with respect to tax liens allowed, through the inaction of tax authorities, to be accumulated over a long period of time. Frequently, such liens consumed the entire estate, even to the exclusion of the costs and expenses incurred in the proceeding. While subd. a of sec. 64 provides for priority of payment of such costs and expenses, such payment is prior only to the other unsecured debts and does not affect or impair valid liens, whether statutory or otherwise. But tax claims may take the form of unsecured debts due to the sovereign, and thus payable by way of priority in the order as provided in sec. 64, or the form of liens created by local statutes. As indicated, if the tax claim takes the form of a lien, or is reduced to the form of a lien, it is not affected by the provisions of sec. 64. In view of the inequitable condition above referred to, there was need for a provision to protect the administration costs and expenses, and like considerations of public policy required a similar protection for wage claimants. However, the historical development, and the inherent differences in the incidents attaching to real and personal property, made it advisable to restrict the remedy provided by this paragraph to liens on *personal* property; but, in respect even to personal property, the provisions are *applicable only where the property has not been reduced to possession or where the liens have not been enforced by sale prior to bankruptcy.*" (Italics supplied in the second instance.) (At pp. 144–145.)

130

The validity of the lien for taxes as against the wage claimants was thus established at the time of the filing of the petition in bankruptcy and the Collector's possession of the personal property of the bankrupt excluded the application of § 67c which otherwise would have postponed the payment of the tax claims to the payment of the claims for administrative expenses and wages specified in clauses (1) and (2) of § 64a. By his subsequent arrangement with the trustee for the sale of the bankrupt's property, the Collector did not lose the right to priority of payment accorded to the perfected tax liens, at the time of bankruptcy, as against the wage claims.

The arrangement between the Collector and the trustee was a natural and proper one. While the amended claim for taxes, penalties and interest, dated August 28, 1946, amounted to $78,865.03, the original claim, filed with the notices of lien prior to March 26, 1946, amounted to only $40,921.94 (even including the interest and costs later computed to August 21, 1946). Of this sum the taxes themselves amounted only to $34,848.04. To meet this, the trustee of the bankrupt's estate, on December 12, 1946, had on hand $31,206.20, evidently derived from the sale of the property originally held by the Collector. These figures, accordingly, suggest the possibility that, in March, 1946, it reasonably may have been supposed that a surplus above the amount of the Government's tax claim might be realized from the sale of the assets then in the possession of the Collector. In that event, it would have been the obviously appropriate procedure for the trustee to sell that property free and clear of liens and encumbrances and then distribute the proceeds to the rightful claimants. Even though there was little or no prospect of realizing such a surplus, it was reasonable and appropriate for the trustee, with the consent of the lien holder, thus to sell the property and distribute its proceeds. See *Van Huffel* v. *Harkelrode,* 284 U. S. 225; 6

Remington on Bankruptcy §§ 2577–2578 (4th ed. 1937).[9]
The propriety of the present conclusion is emphasized by
the fact that the opposite conclusion would, in many
other cases, operate to the detriment both of unsecured
creditors and of the statutory lien holders. It would
compel a lien holder to retain his actual possession of
the property in order to be sure of his full priority in
the payment of his tax claim. He would be compelled
to do this, even though by doing so the bankrupt's
property probably would yield a smaller sales price than
if sold by the trustee. Furthermore, the lien holder
would be brought into sharp conflict with the trustee
whenever there was reason to suppose that the pro-
ceeds of the sale might equal or exceed the tax claims
secured by the lien. Under such circumstances the
bankruptcy court generally may order the sale of the
bankrupt's property by the trustee, free and clear of liens
and encumbrances. See 4 Collier on Bankruptcy §§ 70.97,
70.99 (14th ed. 1942); 6 Remington on Bankruptcy § 2583
(4th ed. 1937). Accordingly, we find no substantial sup-
port for the argument that the lien holder's voluntary
relinquishment of his possession of the bankrupt's prop-
erty, in favor of the bankrupt's trustee, for the purpose
of permitting the trustee to sell the property in this case,
must carry with it, as a matter of law, a postponement of
the payment of the lien holder's tax claim to that of the
claims for wages here presented.

For these reasons the judgment of the Court of
Appeals is

*Reversed.*

[9] The only question then arising would be as to the extent to
which the trustee might deduct from those proceeds his general
expenses of administration, as well as the costs of the sale itself.
This question was touched upon in the agreement with the trustee
but no issue is presented here as to it.