### In re HARDY PLASTICS & CHEMICAL CORP.

#### No. 49876.

United States District Court
E. D. New York.

June 9, 1953.

Louis P. Rosenberg, Brooklyn, N. Y., for debtor.

Frank J. Parker, U. S. Atty., and Nathan Borock, Asst. U. S. Atty., Brooklyn, N. Y., Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney and T. S. L. Perlman, Washington, D. C., Attorneys, Department of Justice, for U. S.

GALSTON, District Judge.

This is a petition by the debtor for review of the supplemental opinion and order of the referee in bankruptcy, entered in this proceeding on December 31, 1952. The proceeding is one under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., for an arrangement.

The debtor filed its petition under Chapter XI on January 23, 1952. Its plan of arrangement was confirmed by the court on May 27, 1952, in an order reserving the question presented by this petition for review. That question arose under the following facts: In the arrangement proceeding the Director of Internal Revenue filed proofs of debt for federal taxes amounting to $83,108.12. On January 14 and 15, 1952,

before the debtor's petition for arrangement was filed, the Director had perfected and filed notices of tax liens for $58,473.42. Notices of the tax liens were filed in the Clerk's Office both in the Eastern and Southern Districts of New York. They were filed also in the Register's Office in Kings, New York and Queens Counties. On January 18, 1952, certain promissory notes and trade acceptances in the debtor's favor were delivered to the Director. On the same day, the Government's lien was asserted against certain accounts receivable by the mailing of a notice of tax claim to the corporation owing the accounts receivable. The Director secured payments on these notes, trade acceptances and accounts receivable totaling $9,026.16.

The debtor's plan of arrangement provided that the administration expenses and priority claims be paid in full, and that unsecured creditors should receive 25% of their claims. Prior to the confirmation of the plan of arrangement, the Director of Internal Revenue and the debtor entered into a stipulation, outside the plan of arrangement, whereby the tax claim was to be allowed in full; the terms of the stipulated agreement calling for the payment of $10,000 in cash and the balance of the claim in monthly installments, secured by a chattel mortgage covering all of the machinery, fixtures and equipment of the debtor. The agreement stipulated to by the parties was approved by the referee and by order of the court. The terms of the agreement were incorporated into an order providing that the agreement "be incorporated in and made part of the order confirming the plan."

Among other costs of administering the estate, the referee charged the debtor with 1½% of the $83,108.12 tax claim, or $1,246.62, as statutory fees for the Referees' Salary Fund and for the Referees' Expense Fund. In ordering the payment of the $1,246.62 as fees, the referee held that the entire $83,108.12 tax claim should be treated as an amount payable to an unsecured creditor within the meaning of Section 40, sub. c(2) of the Bankruptcy Act, 11 U.S.C.A. § 68, sub. c. (2). The debtor objected, claiming that the tax claim could

not properly be treated as an unsecured claim. Upon review, the referee decided that the $9,026.16 obtained by the Director in actual payments should not be charged or computed as an amount payable to an unsecured creditor under Sec. 40, sub. c. (2). Therefore, he ordered that the debtor should receive a credit and refund, but only in the sum of $135.39 (1½% of $9,026.16).

It is the debtor's contention on this petition for review that the tax claim of $58,473.42, for which notices of tax liens had been filed prior to filing of the petition for arrangement, should not have been classified as an unsecured debt within the meaning of Sec. 40, sub. c(2). The debtor seeks, therefore, to modify the referee's order further so as to allow a refund of $877.09 (1½% of $58,473.42) in addition to the sum of $135.39, as directed by the referee.

Sec. 40, sub. c(2) of the Bankruptcy Act provides, in pertinent part, as follows:

"Additional fees for the referees' salary fund and for the referees' expense fund shall be charged, in accordance with the schedules fixed by the conference (a) * * *; (b) against each case in an arrangement confirmed under Chapter XI of this Act, and be computed upon the amount to be paid to the unsecured creditors upon confirmation of the arrangement and thereafter, pursuant to the terms of the arrangement * * *." 11 U.S.C.A. § 68, sub. c(2).

A tax claim in favor of the United States is constituted a lien upon the property of the taxpayer by virtue of Sections 3670–3672 of the Internal Revenue Code, 26 U.S.C.A. §§ 3670–3672. Section 3670 provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, ˙ additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, wheth-

er real or personal, belonging to such person." 26 U.S.C.A. § 3670.

Section 3672 of the Code reads as follows:

"(a) Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. * * *

"(2) With clerk of district court. * * *" 26 U.S.C.A. § 3672.

The referee recognized the Government's tax claims as being "statutory lien claims". However, he held that the claims were not secured claims and therefore subject to the assessment and charge provided for in Section 40, sub. c(2) of the Bankruptcy Act. The referee reached his conclusion by interpreting Section 67, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. c, as affecting the status of a claim as being secured or unsecured under Section 40, sub. c(2). He concluded that since the Director's claims for taxes were not accompanied by possession of the taxpayer's property before bankruptcy, and since under Section 67, sub. c, such claims, even though considered as statutory liens, must be postponed in payment to the debts specified in clauses (1) and (2) of Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(1, 2), (which include fees for the referees' salary and expense funds), it was proper to include the tax claims in computing the required charges and assessments under Section 40, sub. c(2).

The Government appears in this proceeding on behalf of the Referees' Salary and Expense Funds. It does not contend, however, that the tax claims constitute unsecured debts. It takes the view that the tax lien granted by statute gives the tax claims many characteristics of a secured claim, but that the application of the postponement provisions of Section 67, sub. c deprives the claims of some of the characteristics of a secured claim. Moreover, it professes to take "no position on the result to be reached, leaving it to the Court's determination whether the referee's order should be affirmed or set aside."

A lien for taxes is by way of security against particular property or assets. Generally speaking, where there is a valid lien, the tax claim is a secured one payable from the value of the property to which it attaches. 6 Remington on Bankruptcy, Sec. 2824 (5th Ed. 1952). In Goggin v. Division of Labor Law Enforcement of California, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543, there is language indicating that tax liens are to be distinguished from unsecured claims. There, 336 U.S. at page 127, 69 S.Ct. at page 474, the Supreme Court stated:

"While § 64, as amended, somewhat readjusts priorities among unsecured claims, § 67 continues to recognize the validity of liens perfected before bankruptcy as against unsecured claims. * * * Section 67, sub. c, as amended in 1938, does, however, introduce a new postponement in the payment of certain claims secured by liens to the payment of other claims specified in clauses (1) (for certain administrative expenses, etc.) * * *. This subordination is, however, sharply limited."

An examination of Section 67, sub. c shows that it deals with the question of priority in the payment of certain designated claims. The terms thereof do not purport to alter the status of claims which are otherwise to be regarded as secured or unsecured claims. Where the assets of the debtor are not sufficient to pay a statutory tax lien after the payment of administrative expenses and wage claims, the practical effect of Section 67, sub. c may make the statutory tax lien less "secure" in respect to payment. Even assuming that Section 67, sub. c may affect the security afforded the tax claims by virtue of the statutory lien, at most it takes away some of the characteristics of a secured claim. It subordinates payment to the specified claims, but it does not relegate the Director to the position of having to share the remaining assets, in payment of his claims, with the general unsecured creditors.

The situation discussed above is only hypothetical in the instant case, however, for there is no question that the Director's tax claims will be paid in full. In respect to the installment payments, it was stated during the hearing on this petition for review that the chattel mortgage given was more than adequate as security for the balance due. Moreover, included in the terms and conditions of the stipulation between the Director and the debtor are the following pertinent provisions:

"4. No action shall be taken for the purpose of enforcing the liens of the United States, notices of which have heretofore been filed, unless and until there shall be a default in the installment payments herein provided for."

"6. That time is of the essence in connection with the deferred payments, and in the event of default in making any of the deferred payments of Federal taxes as provided herein, * * * the United States of America or the Collector of Internal Revenue, or both, shall have the right to declare the outstanding balance * * * due and payable, and shall have the right to collect the outstanding balance by distraint proceedings or by any other proceeding authorized by law * * *."

"7. That so long as the Federal tax liabilities claimed in this proceeding remain outstanding and unpaid, the debtor shall not create any mortgage, lien, or encumbrance upon, or pledge any of the properties now owned by the debtor, except as herein provided, without first obtaining the written consent of the Collector of Internal Revenue, First District of New York, nor shall the debtor sell or otherwise dispose of its assets other than in the ordinary course of business without first obtaining written permission of the said Collector."

It is apparent from these terms and conditions that the Director has not waived the statutory lien existing in favor of the Government's tax claims.

In Strom v. Peikes, 123 F.2d 1003, 1005, 138 A.L.R. 937, the Court of Appeals of this Circuit pointed out that there is an important distinction to be drawn between statutes creating priority of distribution and statutes providing security for a creditor by awarding him a lien. It would appear that there has been a failure to distinguish between the question of the priority of claims and the question of whether a claim is to be regarded as secured or unsecured in the instant case too.

Moreover, there is some confusion between when a certain claim is entitled to payment, and the right to compute a payment as part of the claim entitled to preference in payment. Admittedly, administrative expenses, including referees' fees and expenses, are entitled to payment ahead of all statutory liens for taxes under Section 67, sub. c. It doesn't necessarily follow, however, that amounts to be paid under a statutory tax lien are subject to a charge for referees' fees and expenses solely because it is thus subordinated in payment. The test to apply under Section 40, sub. c(2) is whether the payments to be made in satisfaction of the tax claims protected by the perfected statutory lien can be regarded as being included within "the amount to be paid to the unsecured creditors upon confirmation of the arrangement and thereafter, pursuant to the terms of the arrangement".

In view of the foregoing it must be concluded that in the circumstances of this case the Government cannot be regarded as an "unsecured creditor" within the meaning of Section 40, sub. c(2). Therefore, the debtor's petition to modify the referee's order so as to allow a refund of 1½% of $58,473.42 is granted.