In the Matter of **LIEB BROS., Inc.**, a
New Jersey corporation, Debtor.
No. B539–55.

United States District Court
D. New Jersey.
March 29, 1957.

Vincent P. Torppey, Newark, N. J., for City of Newark.

MEANEY, District Judge.

This matter comes before the court by way of an appeal from the findings of the Referee in Bankruptcy made as a result of hearings held before him after the filing of a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.

The debtor, Lieb Bros. Inc., owned a piece of property in Newark, N. J., which was sold by order of the Referee. The sum of $125,000 was realized at the sale and there arose the question of the distribution of this sum among creditors. Referee Tallyn found that the following claims had been proven. They are listed in chronological order.

Edward R. McGlynn, Newark, N. J., for Borwac Realty Co.

Chester A. Weidenburner, U. S. Atty., by Jerome D. Schwitzer, Asst. U. S. Atty., Newark, N. J., for United States.

Sanford Silverman, Newark, N. J., for trustee.

| | Claimant | Date of lien | Amount |
|---|---|---|---|
| 1. | Borwac Realty Co. (Mortgage) | June 16, 1951 | $ 26,000.00 |
| 2. | United States, tax lien | Feb. 11, 1952 | 25,689.04 |
| 3. | City of Newark, tax lien | Jan. 1, 1953 | 7,610.83 |
| 4. | United States, tax lien | Jan. 21, 1953 | 112,746.77 |
| 5. | City of Newark, tax lien | Jan. 1, 1954 | 8,353.35 |
| 6. | City of Newark, tax lien | Jan. 1, 1955 | 8,275.19 |
| 7. | City of Newark, tax lien | Jan. 1, 1956 | 4,137.60 |

The Referee determined that the order of priority which obtained among these claimants was as follows. This listing is predicated on the fact that there had been no finding of insolvency.

1. Borwac Realty Co. $26,000.00 on account of its mortgage.

2. United States $25,689.04 plus accrued interest on its tax lien.

3. City of Newark $ 7,610.83 plus interest representing municipal taxes for the year 1953, which became a lien Jan. 1, 1953, but payable to Walnut Realty Co. by virtue of a tax sale certificate which it holds.

4. Whatever balance remains is for application to the federal tax lien of $112,746.77 assessed on Jan. 21, 1953.

The distribution outlined above was to be carried out as follows: Borwac Realty Co.'s $26,000 was to be paid first. This money is to be set aside in a fund. Then, the United States receives $25,689.04 plus accrued interest. Next, the municipal tax lien of the City of Newark for the year 1955 and the first half of 1956, in the total amount of $12,412.79, at 8% per annum, is to be paid. This last sum is to be deducted from the fund set aside to pay Borwac Realty Co. Then, Walnut Realty Co., which holds the municipal tax sale certificate for 1953 in the amount of $7,610.83, plus 8% interest, is to be paid. Lastly, the

United States is entitled to whatever amount remains in payment of its federal tax lien.

In arriving at the order and method of distribution the Referee followed the sequence set forth in the case of United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, which resolved the confusion arising out of conflicting federal and state statutes establishing priorities of liens. This problem of circuity of liens develops when, as in the instant case, the federal statute sets up the mortgage lien as superior to the federal claim, and under state law, N.J.S.A. 54:5–9, municipal tax liens take precedence over mortgagee's claims. Justice Minton, speaking for a unanimous court, held that the mortgage claim must come first and thereafter claims are to be validated in accordance with the principle, "first in time is the first in right" where there is no question of insolvency. Of course where the debtor is insolvent, there is an absolute priority given to payment of indebtedness owing to the United States whether secured by lien or otherwise. There would seem to be no doubt that the Referee conformed to the rule of the New Britain case, supra.

At a tax sale on December 6, 1955, Walnut Realty Co. purchased the municipal tax certificate for 1953 from the City of Newark. The certificate represents $7,610.83 in municipal taxes. The certificate bears 8% interest on the principal sum. This purchase also included the 1954 municipal taxes in the amount of $8,353.35.

At the 1956 hearing before Referee Tallyn Borwac offered to prove that it had secured an assignment to itself of Walnut Realty's tax certificate. Borwac also made an offer of proof that Walnut Realty was in reality Borwac's wholly owned subsidiary.

Because it then held the tax certificate assigned to it by Walnut, Borwac contended that it had made a "payment of taxes" under the terms of the bond secured by the mortgage Borwac held on the property sold. So, a new element was injected into the situation by the insistence of Borwac that in addition to the sum due on its mortgage, it was now entitled to add thereto the amount showing on the face of the Newark City tax certificate for 1953 and 1954 which it had received from Walnut. This contention is based on the terms of the bond which stated that the obligee (Borwac) might, at its option, *pay* such tax, assessment, or water rent in arrears and that such amount would be added to obligee's principal. The principal sum so stated is held at 6% per annum interest.

There are two vices affecting this theory as advanced by Borwac. In the first place, purchase of a tax certificate, which is usually a transaction in the nature of an investment (the certificate bears interest at 8%), does not constitute payment of the tax within the contemplation of the bond. In the second place, the tax certificate purchased by Walnut on November 15, 1955, was purchased by Borwac in November, 1956, *after* sale of the premises in question and confirmation thereof. As the Referee suggests with propriety in the conclusions of law in his certificate of review, it was too late for Borwac to enhance the amount of its claim by purchase of a tax sale certificate when it did.

Further, this court feels that claims in a proceeding under Chapter XI are fixed as of the date of the filing of the petition for an arrangement under Chapter XI as it is in a bankruptcy proceeding under Chapter X of the Act, 11 U.S.C.A. § 501 et seq. Thus, Chapter XI, section 352, of the Bankruptcy Act states:

"Where not inconsistent with the provisions of this chapter, the rights, duties, and liabilities of creditors and of all other persons with respect to the property of the debtor shall be the same, where a petition is filed under section 321 of this Act and a decree of adjudication has not been entered in the pending bankruptcy proceeding, as if a decree of adjudication had been entered in such bankruptcy proceeding at the

time the petition under this chapter was filed, or, where a petition is filed under section 322 of this Act, *as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered at the time the petition under this chapter was filed."* (Emphasis supplied.)

All rights, therefore, may be said to have vested at the time of the filing of the petition September 30, 1955. See Goggin v. Division of Labor Law Enforcement, of California, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543; In re Hansen Bakeries, 3 Cir., 1939, 103 F.2d 665; In re Weil, D.C.M.D.Pa., 39 F.Supp. 618.

Borwac's insistence that its purchase in November, 1956, of Walnut's tax certificate fulfills the condition of the bond in regard to the payment of tax, emphasizes the error of its position. Any attempt by Borwac, as here, to purchase tax certificates from Walnut would be effective only as an assignment of Walnut's rights as an investor and would not serve to merge Walnut's claims in Borwac's principal sum as mortgagee with first priority, because Walnut had only those rights which existed at the time petition was filed.

The problems presented to the court, namely, circuity of liens, efficacy of Walnut's transfer by sale to Borwac of tax certificate after the petition in bankruptcy was filed, and the question of the exercise of sound discretion by the Referee in following the distribution formula outlined in United States v. City of New Britain, supra, are disposed of by the foregoing.

The court reaches the following conclusions regarding Referee Tallyn's findings:

1. The Referee exercised sound discretion in refusing to reopen the matter.

2. Borwac Realty Co. did not *pay* taxes in terms of the bond but only purchased a tax certificate from Walnut Realty Co., which left the tax still imposed on the property.

3. The State by its statutes may not negate the provisions of the federal statute applicable in bankruptcy.

4. The Referee, then, properly applied the priority established by state law where it did not conflict with federal law.

The findings of the Referee are affirmed.

Let an order be submitted.