**In the Matter of AMERICAN HEALTH STUDIOS, INC., Debtor.**

**No. 2560.**

United States District Court
S. D. Texas,
Houston Division.

Nov. 17, 1959.

William B. Butler, U. S. Atty., and John H. Baumgarten, Asst. U. S. Atty., of Houston, Tex., for United States.

Hutcheson, Taliaferro & Hutcheson (Thad Grundy), Houston, Tex., for the Trustee.

INGRAHAM, District Judge.

The case is before the court on the motion of the United States of America to correct an order entered by this court on February 27, 1959, approving a report of sale of the Trustee of the debtor's estate and authorizing and directing the Trustee to execute an agreement of sale with respect to debtor's properties located in southern California.

On February 4, 1959, an involuntary petition was filed in this court by three creditors of American Health Studios, Inc., debtor corporation, praying that proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. be had with respect to said debtor corporation. Upon said petition and answer of the debtor, the court entered on February 5, 1959, an order approving said petition and appointing McClelland Wallace as Trustee of the estate of the debtor. Said order contained, inter alia, the usual provisions staying creditors' suits and enforcement of liens.

On February 27, 1959, the court entered an order, without notice to creditors and without hearing, approving a report of sale of the Trustee, verified February 26, 1959, and authorizing and

directing the Trustee to execute an agreement of sale with respect to debtor's properties located in southern California. The court further ordered said sale to be made free and clear of all liens and encumbrances asserted against the property, which liens and encumbrances would be transferred to the proceeds of the sale. The court made no provision with respect to the disposition of such proceeds of the sale. The assets of the debtor involved therein consisted solely of personal property, none of which was at any time in the possession of any officer or agent of the United States of America.

On April 24, 1959, a motion was filed by the United States of America to correct the court's order of February 27, 1959, to provide that the proceeds of the sale of the southern California properties, as well as any other properties of the debtor, should not be used to pay administrative expenses of the debtor and that the proceeds of the sale of said properties be paid into the registry of the court, or in the alternative, be maintained by the Trustee in a separate fund for the payment of the secured claims of the United States of America or other secured creditors. Proofs of claim for Internal Revenue taxes have been duly filed in this action in the total amount of $130,121.92 of which the sum of $41,-146.42 represents liens for taxes due the United States which were assessed prior to the filing of the petition for corporate reorganization.

On May 15, 1959, the Trustee answered to and opposed the motion of the United States to correct the order of February 27, 1959, maintaining that the proceeds of the sale should be available for payment of administrative expenses.

The movant, United States, contends that the assessment of taxes by the United States creates a specific and perfected lien as of the date of assessment and that the proceeds of the sale of property to which a prior lien has attached cannot be used for the general administrative expenses of the debtor's estate. The United States cites Title 26 United States Code, § 6321, to the effect that a lien for unpaid taxes in favor of the United States attaches to all property and rights to property, whether real or personal, belonging to the deliquent taxpayer, and Title 26 United States Code, § 6322, to show that the lien imposed by Section 6321 arises at the time the assessment is made and continues until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time. Not only did a number of these tax liens arise by assessment, but some were further perfected by filing in the office of the County Clerk of Harris County, Texas, within the district of this court, though others appear to have arisen within other judicial districts of the United States. The United States also cites a number of authorities which would show that the proceeds of the sale of property to which a prior lien has attached cannot be used for the general administrative expenses of the debtor's estate, that the court, in the sound exercise of its discretion, should provide that the proceeds of the sale of debtor's property should be paid into the registry of the court, or in the alternative, be maintained by the Trustee in a separate fund for the payment of the claims of secured creditors, and that a lienholder whose lien has attached to the proceeds of the sale of his security is entitled to the full amount of his lien, minus only a contribution to the expenses of administration measured by and not in excess of what it would cost to foreclose the lien in a state court.

The Trustee contends that the tax liens in question are specifically subordinated to expenses of administration and to certain priority wage claims by the provisions of Section 67, sub. c of the Bankruptcy Act, Title 11 United States Code Annotated, § 107, and that the reorganization court has equitable power to provide for the payment of expenses of administration ahead of tax liens. It is emphasized that the personal property of the debtor involved in this proceeding was not at any time in the possession of any officer or agent of the United

States and that, therefore, these tax liens do not fall within any of the exceptions of Section 67, sub. c(1) to postponement in payment in favor of the debts specified in clauses (1) and (2) of Subdivision a of Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(1, 2), which includes certain broad categories of administrative expenses.

In the opinion of the court the motion of the United States to correct the order of February 27, 1959, should be denied. The proceeds of the sale of the southern California properties, as well as the proceeds of the sales of any other properties of the debtor, shall be available for the payment of those administrative expenses of the estate specified in Section 64, sub. a(1) of the Bankruptcy Act. All the Federal tax liens involved in this proceeding and all other statutory liens coming within the terms of Section 67, sub. c should be postponed in payment in favor of said administrative expenses of the estate.

The tax liens involved in this proceeding are specifically subordinated to certain expenses of administration and to certain priority wage claims by the provisions of Section 67, sub. c of the Bankruptcy Act, Title 11 United States Code Annotated, § 107, which states:

"c. Where not enforced by sale before the filing of a petition initiating a proceeding under this Act, and except where the estate of the bankrupt is solvent: (1) though valid against the trustee under subdivision (b) of this section, statutory liens, including liens for taxes or debts owing to the United States or to any State or any subdivision thereof, on personal property not accompanied by possession of such property, and liens, whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of section 64 of this Act and such liens for wages or for rent shall be restricted in the amount of their payment to the same extent as provided for wages and rent respectively in subdivision (a) of section 64 of this Act; and (2) the provisions of subdivision (b) of this section to the contrary notwithstanding, statutory liens created or recognized by the laws of any State for debts owing to any person, including any State or any subdivision thereof, on personal property not accompanied by possession of, or by levy upon or by sequestration or distraint of, such property, shall not be valid against the trustee: *Provided, however,* That so much of clause (1) of this subdivision (c) as restricts liens for wages and rent and clause (2) of this subdivision (c) shall not apply in proceedings under chapter X of this Act, unless an order shall be entered therein directing that bankruptcy be proceeded with, or in proceedings under section 77 of this Act. The court may on due notice order so much of any lien in excess of the restricted amount under clause (1) of this subdivision and any lien invalid under clause (2) of this subdivision to be preserved for the benefit of the estate and, in any event, such lien for the excess and such invalid lien, as the case may be, shall pass to the trustee."

There is some question in the authorities as to whether or not this provision of the Act is intended to apply in corporate reorganizations under Chapter X. Professor James Wm. Moore takes the view in Volume 6 of Collier on Bankruptcy that Section 67, sub. c, although it "purports to be applicable in Chapter X cases, cannot be regarded as operative in corporate reorganizations. The provision in part is based on the application of Section 64(a) (1) and (2) of the Act, dealing with priorities in ordinary bankruptcy, which is specifically rendered inapplicable under Chapter X by Section 102 of Chapter X." 6 Collier on Bankruptcy (1947) p. 2840. It is believed that this opinion by a respected author must be considered in connection with his

analysis of Section 197 of Chapter X, giving to the district judge the power to fix the division of creditors and stockholders into classes according to the nature of their respective claims and stock. Professor Moore appears to be arguing that, because the district judge in a reorganization proceeding has broad powers to classify creditors, he is not bound by the priority system prescribed by Section 64 and that, therefore, Section 67, sub. c, to the extent that it is based on that system, should not be applicable. This argument might be considerably more persuasive if we did not find the same author, later in the same volume, advocating what amounts to the opposite result, in stating his view that lienholders should be subordinated to expenses of administration in a Chapter X proceeding:

"Even in ordinary bankruptcy, where the secured creditor is generally immune from the liquidating processes of the court, the preferable view is that where the lienholder expressly or impliedly consents to a sale free of liens and encumbrances, and irrespective of whether such sale brings less or more than enough to discharge the lien and interest thereon in full, the proceeds are chargeable with the actual costs of the sale, plus costs reasonably incurred in the preservation of the property and the proportion of the administrative expenses (such as the referee's, receiver's or trustee's commissions) that may properly be attributed to the sale. Moreover, the lienholder can be charged with general costs of administration, where he has in some manner caused or benefited from such expenditure, or expressly or impliedly consented thereto. These principles, supported by the better authorities, present persuasive analogies, particularly where, as in Chapter X, the secured creditor is within the scope of and participates in the reorganization process, and where the aim of the Chapter X proceeding to preserve going-concern values redounds to the benefit of the secured creditors as well as to others. Certainly a result is doubtful which excludes from any payment at all an administrative expense arising from the very continuation of the debtor's business during reorganization and from which the secured creditors derive a direct advantage." 6 Collier on Bankruptcy (1947) pp. 3460–3461.

There appears to be only one reported case in which this question was considered in a Chapter X proceeding. In re Pennsylvania Central Brewing Company, 3 Cir., 1940, 114 F.2d 1010, at page 1012, involving a contest between wage claimants and various state and municipal taxing authorities, the court of appeals distinguished between the subordination of statutory liens on personal property and statutory liens on real property, saying:

"We cannot accept these contentions. We are of the opinion that Congress has elected to treat personal property and real estate upon different bases. This is clearly one of the purposes of Section 67, sub. c. If there is a statutory lien upon personal property not accompanied by possession or a distress for rent (which is always upon personal property) whether statutory or not, such liens are postponed in payment to expenses of administration and wage claims. If, however, the statutory lien is upon real estate, it is not postponed but is payable strictly pursuant to the provisions of Section 67, sub. b.

"Section 67, sub. c. does not operate to postpone the payment of statutory liens to general expenses of administration and wage claims. On the contrary, following the sale of the real property in the case at bar a particular fund charged with the liens was brought into court. The fund thus created must be paid out in satisfaction of the valid liens. To put any other construction upon the amendments to the Act is to

do violence to the language of Section 67, sub. c."

It is significant that Congress made extensive changes in Section 67, sub. c by the Act of 1952, 66 Stat. 420, 427, adding the following entirely new proviso:

"Provided, however, That so much of clause (1) of this subdivision c as restricts liens for wages and rent and clause (2) of this subdivision c shall not apply in proceedings under chapter X of this Act, unless an order shall be entered therein directing that bankruptcy be proceeded with, or in proceedings under section 77 of this Act."

The only portion of clause (1) which was omitted from this proviso is that portion which postpones statutory liens for taxes on personal property not accompanied by possession of such property, and liens of distress for rent. It seems clear that if Congress had intended that the provision for postponement of statutory liens should not apply in proceedings under Chapter X, it would have expressed itself accordingly.

The historical background of the present Section 67, sub. c is described in the opinion of the Supreme Court in Goggin v. Division of Labor Law Enforcement of California, 1948, 336 U.S. 118, at page 127, 69 S.Ct. 469, at page 474, 93 L.Ed. 543:

"* * * Section 67, sub. c, as amended in 1938, does, however, introduce a new postponement in the payment of certain claims secured by liens to the payment of other claims specified in clauses (1) (for certain administrative expenses, etc.) and (2) (for certain wages) of § 64, sub. a. This subordination is, however, sharply limited. For example, it does not apply to statutory liens on real property, or to those actually enforced by sale before bankruptcy, or, in general, to liens on personal property when accompanied by actual possession of such property. The background of

§ 67, sub. c suggests a conscious purpose to give a narrowly limited priority to administrative expenses and to certain wage claims, at least in instances disclosing accumulations of unpaid taxes the priority of which wage earners had no good reason to suspect, and which might absorb the entire estate of the bankrupt unless postponed by these provisions. * * *"

The footnote to this statement, 336 U.S. 127–129, 69 S.Ct. 474, is also enlightening:

"These provisions apparently originated in Amendments proposed by the National Bankruptcy Conference which were before Congress in a Committee Report Analysis of H.R. 12889, 74th Cong., 2d Sess. (1936). This report states that the bill was introduced by Mr. Chandler, May 28, 1936, containing Amendments proposed by the National Bankruptcy Conference, and the several Sections are accompanied by explanatory notes. Section 67, sub. c, as there proposed, resembles substantially the Section as finally enacted. The note explanatory of it attributed to Jacob I. Weinstein, a member of the Conference, includes the following statement:

" 'Section 64 (of the Bankruptcy Act before amendment by the Chandler Act) is declaratory of a policy that the costs and expenses in connection with a bankruptcy proceeding and its administration shall be first paid in distribution. It is a sound policy and is in accordance with the general principles well established in liquidation proceedings. But Section 67 of the Act does not apply the same limitation with respect to valid liens. The Supreme Court, in the case of City of Richmond v. Bird, 1919 [249 U.S. 174], 39 S.Ct. 186, 63 L.Ed. 543, 43 Am.Bankr.Rep. 260, resolved the conflict in the lower court decisions by holding that the priority provi-

sions of Section 64 do not apply to liens valid under Section 67. * *

" 'It is significant that in recent years state legislatures have been enacting special legislation in favor of tax claims, public debts, and a variety of private claims. Statistics in the bankruptcy cases show that the effective administration of the bankruptcy law has seriously suffered therefrom. Such claims, particularly tax liens, often consume the entire estate, leaving nothing for the payment of the costs and expenses of administration incurred in reducing the assets to cash. In many such cases the tax liens represent an accumulation of delinquent items covering a long period of time, without any attempt on the part of tax collectors to enforce payment prior to the bankruptcy proceeding.

" 'There is therefore need for a provision to protect the administration costs and expenses; and similar considerations apply to wage claims. Accordingly, we have selected, from among the priorities fixed be Section 64 (as revised), these particular items for protection. However, by reason of the historical development and the inherent differences existing in the incidents attaching to real and personal property, it would seem advisable to restrict the remedy thus provided to liens on personal property, *where such liens have not been enforced by sale prior to bankruptcy.*' (Italics supplied.) Id. at page 212, n. 1.

"At that time the bill did not also except from subordination statutory tax liens on personal property 'accompanied by possession of such property.' The addition of that clause gives it special emphasis and suggests its appropriate effect as a warning to other claimants that the property, so possessed, will not be available in the first instance for the administrative expenses and wage claims specified in clauses (1) and (2) of § 64, sub. a.

"The report filed by Mr. Chandler for the Committee on the Judiciary, July 29, 1937, to accompany the bill then known as H.R. 8046 merely stated: 'In subdivisions b and c statutory liens are protected and permitted to be perfected if the time allowed by law for perfecting them has not expired.' H.R.Rep. No. 1409, 75th Cong., 1st Sess. 34 (1937), and see references to §§ 64 and 67, sub. c on pages 9, 15, 16.

"See also, Weinstein, The Bankruptcy Law of 1938 (1938):

" 'This subdivision is new and is designed to correct an inequitable condition which existed under the old Act, particularly with respect to tax liens allowed, through the inaction of tax authorities, to be accumulated over a long period of time. Frequently, such liens consumed the entire estate, even to the exclusion of the costs and expenses incurred in the proceeding. While subd. a of sec. 64 provides for priority of payment of such costs and expenses, such payment is prior only to the other unsecured debts and does not affect or impair valid liens, whether statutory or otherwise. But tax claims may take the form of unsecured debts due to the sovereign, and thus payable by way of priority in the order as provided in sec. 64, or the form of liens created by local statutes. As indicated, if the tax claim takes the form of a lien, or is reduced to the form of a lien, it is not affected by the provisions of sec. 64. In view of the inequitable condition above referred to, there was need for a provision to protect the administration costs and expenses, and like considerations of public policy required a similar protection for wage claimants. However, the historical development, and the in-

herent differences in the incidents attaching to real and personal property, made it advisable to restrict the remedy provided by this paragraph to liens on *personal* property, but, in respect even to personal property, the provisions are *applicable only where the property has not been reduced to possession or where the liens have not been enforced by sale prior to bankruptcy.'* (Italics supplied in the second instance.) At pages 144, 145."

In another contest between California and the United States, the Court of Appeals for the Ninth Circuit again emphasized the intention of Congress to insure the payment of administrative expenses and small wage claims in California State Department of Employment v. United States, 9 Cir., 1954, 210 F. 2d 242, at page 244:

"From the legislative history it appears that the sole concern of Congress in enacting § 67, sub. c was to insure payment of administrative expenses and small wage claims. Goggin v. Division of Labor Law Enforcement of California, 1948, 336 U.S. 118, 127, 69 S.Ct. 469, 93 L.Ed. 543 citing Committee Report Analysis of H.R. 12889, 74th Congress, 2d Sess. (1936) and Weinstein, the Bankruptcy Law of 1938 (1938). Prior to the Act of 1938 all liens valid in bankruptcy had precedence over unsecured creditors having only priority claims under § 64, sub. a. Liens in favor of contractors, materialmen, and particularly accumulated tax liens, frequently consumed the bankrupt's estate to the exclusion of the costs and expenses of administration incurred in the proceeding. To insure payment of administrative expenses and wage claims Congress decided to subordinate statutory liens to a limited extent, that is, to unsecured claims having a first and second priority under § 64, sub. a. Collier on Bankruptcy, 14th Ed., Vol. 4, par. 67.20."

The treatment of expenses of administration in Section 77 of the Act, 11 U.S.C.A. § 205, covering reorganization of railroads, tends to shed further light on the problem. In discussing the application of Section 67, sub. b and Section 67, sub. c to railroad reorganization under Section 77, Collier states at pages 540–542 of Volume 5:

"But Section 67c, subordinating and restricting the amount of payment on certain liens, would appear inapplicable in view of the fact that it is specifically related in its effect to certain priority provisions of Section 64. Contrary to the rule in ordinary bankruptcy, however, liens as such do not have complete priority over all unsecured claims in the reorganization proceeding. As we have noted, the allotment of priorities generally follows equitable principles, by which it is well settled that certain liens may be chargeable with the payment of costs of administration and operating expenses, as well as certain other claims covered by the 'six-months rule,' hereinafter discussed."

A number of decisions under Section 77 are cited in the footnote to the above statement, all holding that costs of administration, as well as costs of operation of the railroad, will be given priority over secured creditors who may be expected to benefit by the continued operation of the business of the debtor. Several decisions are cited for the view that taxes accruing during the reorganization are an item of current operating expense. If the theory of the United States were allowed to prevail in this proceeding, it would be interesting to see whether the Treasury Department would then be content that the alleged tax lien filed to secure the payment of taxes accruing prior to the reorganization should be permitted to prevent the Trustee from paying current withholding and social security taxes on the wages paid to employees who operate the business of the debtor. Since the legal authority of Section 67, sub. c provides for the pay-

ment of the specified expenses of administration ahead of these tax liens, it is unnecessary to consider whether the Bankruptcy Court, as a court of equity, has the power to provide for the payment of reasonable expenses of administration of the estate out of the only funds available for that purpose.

The theory and cases cited by the United States can be readily distinguished. It need not be disputed that a tax lien arises at the time of assessment and attaches to all property and rights to property, whether real or personal, belonging to the delinquent taxpayer, under Title 26 United States Code, §§ 6321 and 6322. Even though such a lien may have been perfected in that manner, it may still be displaced partially by Section 67, sub. c of the Bankruptcy Act which specifies that "statutory liens, including liens for taxes or debts, owing to the United States * * on personal property not accompanied by possession of such property * * * shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of section 64 of this Act * * * " This provision of Section 67, sub. c plainly covers tax liens that may arise under Title 26 United States Code, §§ 6321 and 6322, and the liens involved in this proceeding. Thus Section 67, sub. c is the governing statute in this proceeding. Furthermore, there does not appear to be any conflict between the proper application of Section 67, sub. c and Sections 6321 and 6322. The United States may have valid and perfected liens under Sections 6321 and 6322 but that does not mean that payment of these liens may not be postponed to the payment of proper expenses of administration under Section 67, sub. c.

It may be squarely disputed, however, whether any of the cases cited by the United States for the proposition that the proceeds from the sale of property to which a prior lien has attached should not be used for the general administrative expenses of the estate, apply to Federal tax liens since the amendment of Section 67, sub. c in 1938. A number of the cases cited by the United States were decided before 1938 and none of them involved a Federal statutory tax lien. For example, the leading case, Gugel v. New Orleans National Bank, 5 Cir., 1917, 239 F. 676, apparently involved liens obtained by private parties and was decided more than 20 years before the 1938 amendment. Similarly, Odendahl v. Pokorny Realty Co., 5 Cir., 1935, 76 F.2d 271, concerned a landlord's lien and was handed down before the 1938 amendment. The only case of any possible significance is Reconstruction Finance Corporation v. Rhodes, 5 Cir., 1954, 214 F. 2d 606, 48 A.L.R.2d 1339, in which the RFC, a government corporation, had objected to the sale of property free of its mortgage lien and was objecting to a court order to pay to the bankrupt estate the sum of $860.79, which the court said represented expenses directly attributable to the sale of the property. There is no indication, though, that the mortgage lien held by the RFC was a statutory lien falling within the terms of Section 67, sub. c. That provision, in fact, was not mentioned in the Fifth Circuit opinion. Under the provisions of Section 67, sub. c, therefore, Federal tax liens have been taken out of the coverage of the cases cited by the United States, which would apply to liens outside the scope of Section 67, sub. c. The motion of the United States to correct the court's order of February 27, 1959, will be denied.

The clerk will file this memorandum and furnish true copies hereof to the Trustee and the attorneys, who will draft and submit order accordingly.