**UNITED STATES of America,
Appellant,**

v.

**O. E. MORRISON and R. E. Morrison,
Appellees.**

**No. 16474.**

United States Court of Appeals
Fifth Circuit.
June 29, 1957.

286

Robert Coe, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., John C. Ford, Asst. U. S. Atty., Dallas, Tex., A. F. Prescott, Atty., Dept. of Justice, Washington, D. C., Heard L. Floore, U. S. Atty., Fort Worth Tex., for appellant.

Vactor H. Stanford, Jonathan H. Allen, Stanford & Allen, Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Out of strikingly simple facts two questions emerge: First, whether the equitable vendor's lien for the unpaid purchase price of Texas real estate is sufficiently specific and perfected to outprime a Federal tax lien. And second, whether the District Court as a jurisdictional prerequisite in a suit to quiet title, 28 U.S.C.A. § 2410, from a Federal tax lien must inexorably order a foreclosure.

Morrison, the Vendor, May 13, 1955, sold property to Burk, the Purchaser (Taxpayer), for a total consideration of $18,500. Of this, $12,800 was a prior mortgage to a third party which Taxpayer apparently assumed, $2,100 was paid in cash or the equivalent and, important here, the balance of $3,600 was made up of one check for $500 and a series of $500 (one apparently for $600) checks postdated serially for successive months. The conveyance did not expressly reserve a vendor's lien, nor was there any conventional vendor's lien, mortgage or deed of trust executed by the Purchaser (Taxpayer) for the $3,600 balance. The $500 check for the down payment and the first post-dated $500 check were honored and paid. Consequently when the Vendor collided with the Federal Tax Collector,

$2,600 was still owed the Vendor on the purchase price.

In the meantime, Federal taxes due by Taxpayer were, on various dates,[1] assessed for a total of $7,912.76 and Notice of Tax Lien filed in the Dallas County Clerk's office. Unaware of this activity, the Vendor on November 30, 1955, sued the Purchaser (Taxpayer) in the State Court to impress an equitable lien on the property for the unpaid purchase price of $2,600. Simultaneously a *lis pendens* was filed in the Dallas County Clerk's office. About December 20, 1955, the Purchaser (Taxpayer) reconveyed the property to Vendor for a consideration of $275 in cash and a cancellation of the unpaid balance under the original deed.

March 12, 1956, Vendor under 28 U.S. C.A. § 2410 (note 5, infra) brought suit in the State Court to quiet title and remove the cloud of the Federal tax liens asserted in respect of the Purchaser (Taxpayer). After removal of the Government's petition, 28 U.S.C.A. § 1444, the Trial Court without a jury held that the United States had no claim on the property and accordingly entered judgment removing the asserted tax liens.

■ Since the Vendor, asserting here his equitable vendor's lien, has neither the status of a "mortgagee, pledgee, purchaser, or judgment creditor," the right of the Government to the tax lien[2] under Section 6321 is not affected by the race between the Notice of Tax Lien (note 1, supra) and the Vendor's *lis pendens* for recordation[3] under Section 6323, and the question of priority must be determined by other considerations, United States v. Albert Holman Lumber Co., 5 Cir., 206 F.2d 685, modified on rehearing, 5 Cir., 208 F.2d 113; Macatee, Inc. v. United States, 5 Cir., 214 F.2d 717, the principal factor being that the lien which is first in time is first in right, United States v. Atlantic Municipal Corporation, 5 Cir., 212 F.2d 709, if, but only if, the one first in time is *specific* and *perfected* in the Federal sense.

■ The initial inquiry whether it is a lien and its date of rank for the limited purposes of this case may be quickly disposed of. As to the latter, coming into being at the time of the conveyance May 13, 1955, it predates the tax lien ef-

| 1. Tax Period & Kind | Date of Assessment | Notice Filed Clerk's Office | Amount Out- standing |
|---|---|---|---|
| 1954 WT & FICA | Aug. 23, 1955 | Oct. 4, 1955 | $3,696.08 |
| 1Q 55 WT & FICA | Oct. 14, 1955 | Dec. 15, 1955 | 1,316.94 |
| 2 & 3Q 55 WT & FICA | Nov. 30, 1955 | Dec. 15, 1955 | 2,899.74 |
| | Total | | $7,912.76 |

2. Internal Revenue Code of 1954 (26 U.S. C.A. § 6321):

"Sec. 6321. Lien for taxes.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

This is former Section 3670 of the 1939 Code (26 U.S.C.A. § 3670).

3. "Sec. 6323. [26 U.S.C.A. § 6323] Validity against mortgagees, pledgees, purchasers, and judgment creditors. ·

"(a) Invalidity of lien without notice.— Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) Under state or territorial laws.— In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or * * *"

This is from former Section 3672 of the 1939 Code (26 U.S.C.A. § 3672).

fective as of the date of the assessment (note 1, supra), 26 U.S.C.A. § 6322. As to the former, under Texas law it is clear that unless there is a waiver (a matter of intention subject to proof or disproof as a fact), an equitable vendor's lien arises as security for the payment of the balance of the purchase price which, with variables here unnecessary to delineate, is, as a general proposition, good against all save subsequent innocent bona fide purchasers for value and encumbrancers. Its origin is equitable depending upon an unpaid balance of the purchase price and not upon an express contractual reservation or the formal conveyance of a security interest by the purchaser back to the vendor or to a trustee. See 43A Texas Jurisprudence, Vendor and Purchaser, Sections 312, 326, 330, 331, 332, 338, 339, 349, 355, 358, 359, 386, 391, 467. As an equitable interest, it is not recordable and protection to innocent purchasers rests on equitable principles, and not on the recordation statutes, 43A Tex.Jur., supra, § 331; 36 Tex.Jur., Records and Registration Acts, Sections 83, 84, under which a conventional mortgage or deed of trust must be recorded to be valid against the United States as a creditor, Underwood v. United States, 5 Cir., 118 F.2d 760.

But its standing in Texas is not enough. The state recognized lien must satisfy the Federal standards, vague as they may be, as choate, that is, perfected liens. When subjected to this test, this lien does not have sufficient completeness to meet the requirements of the cases which, to date, have at the source [4] rejected every recent effort to maintain a non-6323 (former Section 3672) state lien against a Section 6321 (former Section 3670) Federal tax lien or a Section 3466 (31 U.S.C.A. § 191) insolvency priority payment claim.

■■ We need not elaborate on the Federal infirmities of this state lien. It is sufficient to point out that insofar as it bears on the competition for tax priorities, the lien, equitable in nature, arises only because equity in good conscience requires it to accomplish right and justice. Whether it exists depends on the equities which, in turn, depend upon facts including the intention of the vendor either to, or not to, waive it. As a secret lien it is, or may be, outranked by many liens of innocent purchasers or others. And, to enforce it, the only remedy available is an equitable action for

4. See the Report of the Committee on Relative Priority of Government and Private Liens of the Real Property, Probate and Trust Laws Section of the American Bar Association which, with a full bibliography and annotation, collects and discusses the cases on this subject. It points out that in the past ten years the Government has succeeded in each of the twelve cases before the United States Supreme Court which, except as otherwise indicated, involve Section 3670: United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871; United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725; United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271; United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (§ 3466 R.S. 31 U.S. C.A. § 191); United States v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; Goggin v. Division of Labor Law Enforcement of California, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543 (§ 64 and § 67, sub. c of Bankruptcy Act, 11 U.S.C.A. §§ 104, 107, sub. c); Commonwealth of Massachusetts v. United States, 333 U.S. 611, 68 S.Ct. 747, 92 L.Ed. 968 (§ 3466); People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (§ 3466); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (§ 3466).

As we have pointed out and continue to follow, United States v. Atlantic Municipal Corp., 5 Cir., 212 F.2d 709, the principle of first in time first in right is clearly established by United States v. City of New Britain, supra, and the case was remanded for application of this rule. We do not regard it as so soon overruled by the unrevealing brevity of the per curiams in White Bear and Colotta, supra.

foreclosure in which the debt and the lien must be established. Tex.Jur.43a, Vendor and Purchaser, supra, §§ 391, 401, 406, 415. So, while once established by judgment under the doctrine of relation back, it has a high order in the state hierarchy, until the act of judgment occurs, it is, in the Federal view, as contingent as any other lawsuit.

Of course, in this contest the Vendor's rights are not greater after the property was reconveyed (December 20, 1955) to him, 43A Tex.Jur., supra, §§ 368, 369, than they were when he held only an equitable vendor's lien for approximately $2,600. The result is that the District Court's finding and conclusion was erroneous as a matter of law since Taxpayer at the critical date, under the Federal view, was subject only to the claim of an equitable lien junior in rank to the Government's lien (note 1, supra).

■ Under the District Court's decision, the second question arose because even though the Vendor's lien for $2,600 was determined to be superior, this would not be grounds for holding that the Government did not have a lien for $7,912.76. Priority is not equated with invalidity.

Consequently, the Government, on this appeal insisted that when a person claiming an interest in property files a Section 2410 bill *quia timet*, and it is determined that both a Federal tax and private lien exist, but that the private lien is superior, the only relief which the court can grant is to foreclose the property under a literal application of a part of the statute.[5] From this it then urged that since the Vendor did not pray specifically for foreclosure, the District Court lacked jurisdiction. Receding tactically, the Government claims alternatively that as a *minimum* the court cannot remove the cloud of the inferior tax lien by decree unless, on sufficient evidence, the Chancellor finds that the property does not have sufficient value to discharge the prior, superior liens.

The question appears more remote now in view of our holding on the rank of liens, but since we have as little evidence as did the District Judge on which to ascertain values, it remains in the case and is proper for decision.

On it, we are of the clear view that it would be out of keeping with the nature of an equitable proceeding of *quia timet* and the flexibility necessarily reposed in the office of the Chancellor to assume that Congress meant either to

5. 28 U.S.C.A. § 2410. "Actions affecting property on which United States has lien
"(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, including the District Court for the Territory of Alaska, or in any State court having jurisdiction of the subject matter, *to quiet title to or* for the foreclosure of a mortgage or other lien upon real *or personal property* on which the United States has or claims a mortgage or other lien.

\*      \*      \*      \*      \*

"(c) A judicial sale in such action or suit shall have the same effect respecting the discharge of the property from liens and encumbrances held by the United States as may be provided with respect to such matters by the local law of the place where the property is situated. A sale to satisfy a lien inferior to one of the United States, shall be made subject to and without disturbing the lien of the United States, unless the United States consents that the property may be sold free of its lien and the proceeds divided as the parties may be entitled. Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem. In any case where the debt owing the United States is due, the United States may ask, by way of affirmative relief, for the foreclosure of its own lien and where property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of its claim with expenses of sale, as may be directed by the head of the department or agency of the United States which has charge of the administration of the laws in respect of which the claim of the United States arises."

The italicized words in paragraph (a) were added by the 1942 Amendments to former 28 U.S.C.A. § 901 by Chapter 656, Section 1, 56 Stat. 1026.

redesign the procedure or hamstring the judge.

Unlike some courts who appear to have disclaimed jurisdiction, Borough of Kenilworth v. Corwine, D.C.N.J., 96 F.Supp. 68; Integrity Trust Co. v. United States, D.C.N.J., 3 F.Supp. 577; cf. Sherwood v. United States, D.C.N.Y., 5 F.2d 991, to entertain the suit, either direct or after removal from the state court, we think that Section 2410, an integral part of the Judicial Code rather than an administrative mechanism of the tax structure (cf. 26 U.S.C.A. §§ 7403, 7424, see note 6, infra) establishes a specific jurisdiction for these suits as bills to quiet title or for foreclosure of the private lien. The jurisdiction does not depend on the specific relief sought, i. e., foreclosure. Rather it rests on the existence of the traditional controversy in which a private party asserts an ownership which is superior to the claimed lien of the United States Government. This may take a variety of forms: (1) the Government has no lien because the property did not belong to the taxpayer, the tax was not properly assessed, or the lien was time-barred; (2) the Government lien is inferior because the private lien is one specified in Section 6323 and first recorded, or, as asserted here, is a non-6323 lien but specific and perfected and thus prior in time and right.

Congress recognized that such controversies could and would arise. With swift and ofttimes harsh administrative procedures by distraint available to the Government, e. g., 26 U.S.C.A. § 6331, which afford no means of testing legal contentions and the assertion or likely assertion of a Federal tax lien would depress the marketability of property, it was deemed essential that a means be available to determine these controversies. The relief sought, as traditional to equity as the woolsack, is the judicial determination [6] of the validity and rank of the competing liens. 44 Am.Jur., Quieting Title, § 70; see Humble Oil & Refining Co. v. Sun Oil Co., 5 Cir., 191 F.2d 705, 719. A decree of foreclosure is neither necessary nor, in most instances, desired or adaptable.

In other instances, the private party claiming an interest or lien might recognize that the Government's lien is equal to or superior to his. In such case, a controversy does not exist in the sense of a dispute, but one does exist in the traditional sense that judicial relief is required to effectually assert the interest.

6. The Congressional purpose to invest District Courts with the full flexibility of a Chancery Court is reflected by like language affording parallel, although more awkward, relief under 26 U.S.C.A. § 7424 (a substantial recodification of Section 3679, 26 U.S.C.A. § 3679(a) (c) (d) of the 1939 Code). This provides that if the Government, after six months request, declines to institute its own proceeding under Section 7403 (Section 3678 of the 1939 Code) a person claiming an interest may, with permission of the Court, after application and hearing, file a civil action "in which the United States and all persons having liens upon or claiming any interest in the property shall be made parties." In that proceeding, subparagraph (b) declares that " * * * the district court shall proceed to adjudicate the matters involved therein, in the same manner as in the case of civil actions filed under section 7403." Section 7403, 26 U.S.C.A. § 7403 (Section 3678 of the 1939 Code) complementary to § 7424 provides for the filing of a civil action by the United States to enforce its liens naming all persons having liens or claiming interests as parties and which, under subparagraph (c), provides: "The court shall * * * proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, *may decree a sale* of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."

Italicized words in § 7403 were substituted in former 26 U.S.C.A. § 1569 (of 1934), § 1127(a) of the 1926 Internal Revenue Code by Amendment June 22, 1936, 49 Stat. 1743, 26 U.S.C.A. § 1569 (Supp.1938) to make sale permissive, not mandatory.

See also note 8, United States v. Boyd, 5 Cir., 246 F.2d 477, as to the interrelation of these statutes.

For that controversy a determination of what is actually undisputed is unavailing, and what the party needs, and what Congress meant to afford, was a means by which the lien could be foreclosed. Elaborate machinery is specified in subparagraph (c) of Section 2410, note 5, supra, for just such action for liens inferior or superior to that of the Government. And this gives purpose to the 1942 Amendment, note 5, supra, which expressly expanded the scope of relief to include a request "to quiet title to" property.

This conclusion accords with that reached by several district courts, Trust Company of Texas v. United States, D.C. Tex., 3 F.Supp. 683; Oden v. United States, D.C.La., 33 F.2d 553; Minnesota Mutual Life Insurance Co. v. United States, D.C.Tex., 47 F.2d 942, the last of which, Miners Savings Bank of Pittston, Pa. v. United States, D.C.Pa., 110 F.Supp. 563, 570–572, in an elaborate opinion reviewing the authorities pro and con and contemporary legal literature on the problems, concludes that the effect of Section 2410 was to extend, "the scope of relief which could be granted in actions brought under the Act." The Government, of course, stresses heavily Metropolitan Life Insurance Company v. United States, 6 Cir., 107 F.2d 311, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400. Starting from the unsound premise that an action by a property owner to quiet title either under the predecessor of 28 U.S. C.A. § 2410, or the somewhat comparable provisions there pursued (Section 3679 of the 1939 Code now Section 7424, note 6, supra), is one to *extinguish* the lien of the United States, rather than what it really is—a determination that a tax lien does not exist, has been extinguished, or is inferior in rank, the Sixth Circuit, by a divided court, affirmed the decree for want of jurisdiction to do anything except foreclose. The anomaly was that as purchasers from mortgagees of a prior recorded mortgage, the plaintiffs seeking relief by removal of the cloud on their title were held remediless while, at the same time, as a substantive matter, it was extremely doubtful that the Government had any real enforceable lien, certainly not prior to that of the assignor mortgagees. Neither the result nor the reasoning seems satisfactory.[7]

There is no hazard to the revenues in the course which we approve. If the Court on sufficient evidence under controlling legal principles concludes that the Government has no lien, a foreclosure is unnecessary to remove the cloud of the asserted lien from the title, and the Government, in fact, has lost nothing. It will not be different if, on the other hand, the Court were to find that the Government lien does exist and has not been, by valid action prior to the Section 2410 suit, extinguished by a valid foreclosure. As to such lien, whether superior, equal to, or inferior to the competing lien, the Court, if the posture of the controversy is such that the legal determination of the priorities itself is not a full solution, can, under its traditional flexibility as well as that specified in paragraph (c), Section 2410, note 5, supra, take whatever action is necessary to assure that the Government's lien is fully and effectually respected in accordance with its established rank. This might take the form of the judicial ascertainment of values to determine whether there was any real equity over and above the prior lien, whether Government or private. For if it is established to a judicial certainty that nought would be gained by a judicial sale, nought would be lost by declining to compel a needless unproductive act.

Since we reach the conclusion that the Vendor's lien was inferior, the judgment of the District Court is reversed and here rendered to hold that the Government's tax lien for $7,912.76 is superior. On

7. The case has come in for considerable criticism, see Removal of Federal Income Tax Lien as Affected by Power of Sale in Mortgage, 49 Yale Law Journal 1106; also 53 Harvard Law Review 888; Clark, Federal Tax Liens and their Enforcement, 33 Virginia Law Review 13, 32–38, and footnote 79.

remand the Court, to the extent that any of these other questions remain in the case, shall, as a court of equity, take such further and not inconsistent action as may be necessary.

Reversed and rendered in part and remanded.

JONES, Circuit Judge (concurring in part and dissenting in part).

As is said by the majority, the facts are "strikingly simple". Plaintiffs asserted ownership of property in Dallas, Texas. They invoked the provisions of 28 U.S.C.A. § 2410 and brought suit against the United States to quiet title to the property against a claim of lien of the United States. Plaintiffs sought a judgment that the United States had no interest in the property. The United States answered, asserting that it had a lien on the property prior to the title or other interest of the Plaintiffs. The District Court held with the plaintiffs and entered judgment decreeing that the United States had no lien on the property. The opinion of the majority will render judgment that the lien of the United States is superior. With this I am in complete accord.

In the majority opinion there is much discussion of lien priorities, foreclosures and other matters which seem to me to have passed out of the case. The plaintiffs assert no present lien. They claim title. No reason appears that would prevent the operation of the rule that when a lienholder acquires title the lien is merged with the title and is extinguished. 43A Tex.Jur. 422, Vendor and Purchaser, § 368. It was necessary to consider the lien of the plaintiffs as of the time the lien of the United States attached as a predicate for determining the rank of the lien of the United States. However, I am unable to see the "other questions" in the case for the disposition of which the majority has remanded. The majority undertakes, so it seems to me, to prescribe for ailments from which neither litigant is suffering. If I rightly read the majority opinion it may call for the foreclosure of a taxpayers' lien which

the taxpayers have, I think, extinguished and certainly have not asserted. But for the remand to dispose of "other questions" the taxpayers could (and probably still can) pay off and discharge the lien of the United States; and the United States could (but now probably cannot) avail itself of the remedies which the Congress has furnished for the collection of its tax from the property on which it has a lien. From the portion of the opinion which will remand the cause, I deferentially dissent.