**CITY OF DALLAS, TEXAS, Appellant,**

**v.**

**UNITED STATES of America,
Appellee.**

**No. 23160.**

United States Court of Appeals
Fifth Circuit.

Dec. 12, 1966.

Ted P. MacMaster, Max E. Noller, Asst. City Attys., N. Alex Bickley, City Atty., Dallas, Tex., for appellant.

Richard M. Roberts, Act. Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Melvin M. Diggs, U. S. Atty., Abilene, Tex., W. E. Smith, Asst. U. S. Atty., Fort Worth Tex., Joseph Kovner, Jeanine Jacobs, Attys., Dept. of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., W. E. Smith, Asst. U. S. Atty., of counsel, for appellee.

Before BROWN, COLEMAN, and AINSWORTH, Circuit Judges.

COLEMAN, Circuit Judge:

This is an appeal from the Judgment of the District Court which affirmed the findings and opinion of the Referee in Bankruptcy that a tax lien in favor of the United States was superior to a municipal personal property tax lien in favor of the City of Dallas. We affirm.

On and after January 1, 1963, the taxpayer was located and doing business in the City of Dallas, his personal property being subject to advalorem taxes lawfully imposed by the city.

On August 13, 1963, taxpayer filed a petition in bankruptcy.

On May 2, 1963, May 10, 1963, and July 15, 1963, the District Director of Internal Revenue assessed and made

demand upon the bankrupt for payment of income, withholding, and F.I.C.A. taxes amounting to $8,318.41. From the date of the assessments, the United States had a lien upon all property and rights to property belonging to the taxpayer, §§ 6321 and 6322, Internal Revenue Code of 1954; 26 U.S.C., §§ 6321 and 6322.

The first meeting of creditors was held September 10, 1963, a trustee was elected, and the estate was thereafter liquidated. After the costs of administration had been paid there remained the sum of $1475.32, which is the subject of the competing liens of the United States, above described, and of the City of Dallas, which we shall now describe.

There is no dispute that by § 194 of its Home Rule Charter Dallas had a tax lien on the property as of January 1, 1963, for taxes to be levied the following September.[1] Obviously, the exact amount of the lien was unknown and could not be known until the levy was made on September 16, 1963.

The Government therefore argues, and the District Court held, that since the City's lien was not certain in amount on the dates the federal liens were perfected it was inchoate and inferior to the federal lien.

United States By and Through Internal Revenue Service v. Bradley, 5 Cir., 1963, 321 F.2d 224, is not decisive because it was there stipulated that the amount of state taxes was certain.

Although there has been authority to the contrary,[2] we regard it as being now well settled that an inchoate right cannot defeat a federal tax levy, United States, v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. Security Tr. & Savings Bk., 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); United States v. Allen, 5 Cir., 1964, 328 F.2d 377; 94 A.L.R.2d 748, at 771.

The City of Dallas says, however, that the amount of its lien was made definite, certain, and therefore choate, by the provisions of § 44–12 of the Revised Code of Civil and Criminal Ordinances of the City of Dallas, as amended by Ordinance 9581 of December 26, 1962.[3] We agree

---

1. "Sec. 194. A lien is hereby created on all property, personal and real, in favor of the City of Dallas, for all taxes, ad valorem, occupation or otherwise. Said lien shall exist from January 1st in each year until the taxes are paid. Such lien shall be prior to all other claims, and no gift, sale, assignment or transfer of any kind, or judicial writ of any kind, can ever defeat such lien, but the Assessor and Collector of Taxes can pursue such property; and whenever found out, may seize and sell enough thereof to satisfy such taxes.

All persons or corporations owning or holding personal property or real estate in the City of Dallas on the first day of January of each year shall be liable for all municipal taxes levied thereon for such year.

The personal property of all persons owing any taxes to the City of Dallas is hereby made liable for all of said taxes, whether the same be due upon personal or real property, or upon both."

2. United States v. Sampsell, 9 Cir., 1946, 153 F.2d 731.

Ordinance No. 9581

3. "An Ordinance Amending Section 44–12, Chapter 44, of the Revised Code of Civil

and Criminal Ordinances of the City of Dallas, Texas (1960), by providing for the assessment, levying, and collection of ad valorem taxes in certain contingencies during an interim period of January 1 to the date in September when the City enacts its annual tax levy ordinance providing for the continued levy and assessment of taxes to support outstanding ad valorem bonds; providing for the levy of taxes for support of the Park Board, Public Library, and general current expenses of the City during the same period, on the same contingencies above referred to; providing for the purpose of this ordinance; and declaring an emergency.

Be it Ordained By The City Council Of The City Of Dallas:

Section 1. That Section 44–12 of Chapter 44 of the Revised Code of Civil and Criminal Ordinances of the City of Dallas, Texas (1960) be and it is hereby amended so as to hereafter read as follows:

"Sec. 44–12. During the interim period beginning January 1 and ending the following September when the City passes its annual tax levy ordinance, for the purposes hereinafter stated, there is hereby levied an ad valorem tax, supported by a lien as of January 1, as provided by

that if these provisions are applicable then the amount of the taxes as of January 1, and consequently the amount of the lien, was definite and certain.

The problem is found in the following language in the last paragraph of the Ordinance:

"The provisions of this ordinance shall be in force and effect during the interim period hereinabove mentioned provided such taxes are actually paid prior to enactment of the Tax Levy Ordinance, and shall be operative only during that interim period, and shall be superceded by that ordinance when passed as to that particular year. This ordinance shall have prospective application and shall continue in full force and effect from year to year until modified or repealed."

We think this language plainly provides that the interim levy (and thus the interim lien) shall apply only if "such taxes are actually paid prior to enactment of the Tax Levy Ordinance."

Of course, the taxes were not so paid.

■ It necessarily followed, as the ordinance states, that the levy and lien as of January 1, 1963, were never operative and were superseded by the levy ordinance of September 16, 1963. But by that time the federal tax liens had attached.

Nor is the City's position helped by assuming that the bankruptcy adjudication had the effect of an involuntary sale within the meaning of the phrase "in the event the property is sold voluntarily, involuntarily, or in the custody of the

the Section 194 of the Charter of the City of Dallas and the Texas Constitution, for all municipal purposes, upon all taxable property, real, personal and mixed, within the City of Dallas, based upon current valuations and the same rate which the City levied for those purposes for the preceding year. In the event any such taxable property was not on the tax roll for the preceding year but becomes subject to taxation as of January 1 for the then current calendar year, the same tax at the same rate is hereby levied, based upon the current valuations of all other taxable property.

"Taxes at the rate and in the manner hereinabove provided are likewise levied upon all taxable property that was not on the tax roll for the preceding year by reason of not being in the jurisdiction of the City of Dallas, or improvements not in existence on January 1 of the next preceding year, or property that was tax exempt by reason of public, charitable or religious order ownership and has lost its tax exempt status prior to January 1 or thereafter loses such status during the calendar year.

"That all taxes heretofore levied and necessary to meet the City's obligations in connection with ad valorem tax supported bonds or so much thereof as may be necessary are hereby confirmed, and the levy shall be a continued levy so long as such bonds or any additional bonds issued subsequent to the passage of this ordinance are outstanding.

"This ordinance is enacted for the purpose of enabling the Assessor of Taxes on request to furnish the amount of tax-

es to be due and owing for the current calendar year beginning January 1 to the owner or purchaser of property subject to taxation who may desire to prorate taxes in the event the property is sold voluntarily, involuntarily or in the custody of the law, or becomes subject to taxation after the first of the year by reason of losing its tax exempt status during the current calendar year.

"The taxes levied and assessed herein also shall likewise apply in all cases where taxes become due and payable under the ordinances and Charter of the City of Dallas and the State law at an earlier date than provided for by law, by reason of special circumstances that may arise.

"The provisions of this ordinance shall be in force and effect during the interim period hereinabove mentioned provided such taxes are actually paid prior to enactment of the Tax Levy Ordinance, and shall be operative only during that interim period, and shall be superceded by that ordinance when passed as to that particular year. This ordinance shall have prospective application and shall continue in full force and effect from year to year until modified or repealed.

Section 2. Whereas, the City Council of the City of Dallas is of the opinion that the ordinances of the City of Dallas with reference to the above subject matter are inadequate, creates an urgency and an emergency for the immediate preservation of the public peace, health, and safety, requiring that this ordinance shall take effect from and after its passage, and it is accordingly so ordained.

Passed: Dec. 26, 1962."

law." (See note 3). The thing which triggers the indeterminate January-September lien is an event which occurred subsequent to the perfection of the said tax lien. Unitl that moment it was potential only. And that is not enough.

The basic principle of first in time, first in right, thus gave superiority to the federal liens and the Judgment of the District Court must be

Affirmed.