Katherine T. DENNIS

v.

UNITED STATES of America.

Civ. A. No. 73–635–R.

United States District Court,
E. D. Virginia,
Richmond Division.

March 20, 1974.

---

Charles F. Midkiff, Richmond, Va., for plaintiff.

Raymond A. Carpenter, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE District Judge.

Plaintiff brings this action against the United States alleging wrongful levy upon property belonging to her. Jurisdiction is attained pursuant to 26 U.S.C. § 7426. The case is presently before the Court on plaintiff's motion for summary judgment. Both sides have submitted memoranda in support of their respective positions, and on the material before it the Court deems the matter ripe for disposition.

The pertinent facts in this case have been stipulated and that stipulation is set out *en toto* below.

## STIPULATION OF FACTS

The Petitioner and Defendant, by counsel, do hereby stipulate and agree upon the following facts:

1. During the period between January 13, 1967 and February 26, 1973 the petitioner ("Mrs. Dennis") was the victim of a crime or crimes perpetrated by Earnest C. Forbes ("Forbes"), the particulars of which are described below.

2. Mrs. Dennis, prior to the perpetration of the crimes, had known Forbes for approximately fifteen (15) years and did entrust to Forbes the possession of certain funds to be used for a specified purpose.

3. During this period of time, Mrs. Dennis directed Forbes to transmit certain funds to the International Poverty Program (a ficticious [sic] federal agency created by Forbes), such funds

to be used for a lawful purpose. At all relevant times Mrs. Dennis intended to give Forbes only the right to possess said funds so that such funds could be transmitted to a third party, the International Poverty Program. At all times, however, Forbes intended and did convert said funds to his own use thereby violating the specific directions of Mrs. Dennis.

4. On or about February 13, 1973, the Federal Bureau of Investigation commenced an inquiry into Forbes criminal activities and, on March 22, 1973 the federal authorities arrested Forbes pursuant to a lawful warrant and thereafter conducted a search of his living quarters pursuant to a lawful search warrant recovering certain incriminating evidence, including telegrams to Mrs. Dennis from the nonexistent International Poverty Program and printed letterhead stationery for the nonexistent federal program.

5. At the time of the search the federal marshal took into his custody certain property, the subject of this suit, found to be in the possession of Forbes, to-wit:

(a) $8,450.00 in United States currency.

(b) One uncashed cashier's check, No. 3–24196, in the amount of $9,600.00 dated February 27, 1973, drawn on Southern Bank and Trust Company, Richmond, Virginia, made payable to Earnest Forbes, signed by Roland H. Westbrook with a typewritten notation "Katherine T. Dennis" in the lower left-hand portion.

(c) One uncashed United States of America Savings Bond, Series E, Serial Number C1014–868–768E, in the amount of $100.

(d) One 1973 Lincoln Continental, vehicle identification number 3489A808865.

(e) One Chevrolet Corvette, vehicle identification number 1237T3F411495.

(f) Certain other valuable property, the exact description of which can be ascertained on inventory sheets located at the United States Marshal's Office, Richmond, Virginia.

6. Thereafter on October 2, 1973 Forbes was convicted on four (4) counts of mail and wire fraud, 18 U.S.C. §§ 1341 and 1343. At the trial for such crimes, upon cross-examination by the Assistant United States Attorney ("Mr. Dohnal"), Forbes testified that for the past seven years Mrs. Dennis was Forbes' only source of support and that the items of property which he possessed were directly traceable to funds obtained from Mrs. Dennis in the manner so described in paragraphs 2 and 3 above.

7. Shortly after the property described in paragraph 5 was seized by the federal authorities, notice was given by Mrs. Dennis to Mr. Dohnal that she was the rightful owner of such property.

8. Thereafter on or about the 28th day of March, 1973, the Department of the Treasury—Internal Revenue Service filed against Forbes a federal tax lien in the Clerk's Office of the Richmond Chancery Court for unpaid federal income taxes, and on that same date Mr. Dohnal was served with a notice of levy upon the property which is more specifically described in paragraph 5.

9. The Internal Revenue Service has filed a notice of levy on the subject property but has not taken possession of same pending the outcome of Forbes' trial and appeal.

10. A notice was filed on November 29, 1973 in the associated case of Dennis v. Forbes, et al, C.A. No. 73–473–R (E. D.Va.1973) by officials of the United States who have maintained the subject property as described in paragraph 5 herein in their possession pending the completion of criminal proceedings against the said Earnest C. Forbes, the notice stating that the criminal proceedings have been concluded and that, ac-

cordingly, there is no further cause to hold the subject property for official use. [End of Stipulations]

It appears to be agreed by both sides that the money illegally obtained from plaintiff by Forbes was includable within his "gross income" and taxable to him in the year it was received. James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); United States v. Rochelle, 384 F.2d 748 (5th Cir.1967). The question before the Court is whether the specific property obtained in the swindle can be levied upon by the government for the purpose of satisfying the tax obligation arising as a result of its passage into Forbes' possession.

In addressing the here uncontested issue of the taxability of ill-gotten gains, the Supreme Court found Congressional intent "to remove the incongruity of having the gains of the honest laborer taxed and the gains of the dishonest immune." *James, supra,* at 218, 81 S.Ct. at 1055. "In such case, the [criminal] taxpayer has 'actual command over the property taxed—the actual benefit for which the tax is paid'." *Id.* at 219, 81 S.Ct. at 1055.

The policy that a person whose income is so increased is to be taxed on that increase, based as it is on factors of economic benefit heretofore discussed, does not resolve the question of the proper object of government levy presently before the Court. Different equities arise when it is considered that precisely because of the nature of this taxpayer's "business," he may be holding property in which no legitimate interest on his part should be recognized.

■ Title 26 U.S.C. § 6321 provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Aug. 16, 1954, c. 736, 68A Stat. 779.

The sole express limitation of this section is that the property on which levy is made be property "belonging to" the delinquent taxpayer. The lien does not extend to property in the taxpayer's custody, whether acquired by legal or illegal means, which belongs to someone else. Thus in situations of illegal appropriation, at least where ownership does not pass, the true owner's lot is not so unhappy that, having seen his property retrieved from the person who stole it, he must see it confiscated by its retrievers to defray the thief's tax obligation arising as a consequence of the theft. If the property belongs at that point to the victim under relevant law, which is state law, no government lien based on the swindler's failure to pay taxes can be imposed upon it. Thus, as stated in Aquilino v. United States, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960):

The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by the statute." *Id.* 363 U.S. at 512–513, 80 S.Ct. at 1280.

The crucial question, then, is one of state law governing ownership. Thus, using embezzlement as an example, the ramifications which a determination that title does not pass under state law would have on a case such as this have been illustrated as follows:

It is true that holding an embezzler liable for the payment of an income tax on misappropriated funds may

well diminish the victim's prospects of obtaining a full recovery. But it would appear inaccurate to contend that the victim's right of recovery will be affected by the attachment of a superior federal tax lien *on the embezzled funds*. (Emphasis in the original) The Code provides that a federal tax lien attaches to "all property and rights to property . . . belonging to" a delinquent taxpayer. In Aquilino v. United States, decided just one year prior to *James*, the Court held that the taxpayer's "property and rights to property" against which a federal tax lien attaches were to be determined under state law. *There can be no doubt, under state law, that an embezzler has no right, title or interest in the funds which he misappropriates—the funds continue to be the property of the victim.* Thus under the *Aquilino* rule a federal tax lien would *not* attach to embezzled funds traceable into the hands of the embezzler, and the victim's right to recover the funds would *not* be defeated by a claim of Government priority to them. (Emphasis supplied). Libin and Haydon, Embezzled Funds as Taxable Income: A Study in Judicial Footwork, 61 Mich.L.Rev. 425, 439–440 (1963).

■ At common law, the passing of title turns as a general rule on the intent of the original owner. If property is taken from its owner without his consent and with no intention on his part that his ownership be ended, it is a case of simple conversion, or, on the criminal side, larceny or embezzlement, and legal ownership remains unchanged. The same is true if the owner transfers possession of his property to another, for example a bailee or agent, for a specific purpose which does not include a transfer of ownership to the bailee, and the bailee subsequently converts the property to his own use. Similarly, no gift can occur at common law absent an intent to transfer title, see Brown on Personal Property (2d ed.) § 48, pp. 129–30,

and title in an alleged sales transaction passes only if and when passage was intended. *Id.* at § 66, p. 226.

■ On the other hand, if the owner intends to pass title, albeit as the result of fraudulent misrepresentation, voidable title passes and the transaction will be vitiated only by affirmative legal action by the original owner. *Cf. Id.*, at § 70, p. 237. A similarly based distinction appears in the criminal law.

The distinction between the crimes of obtaining by false pretense and acquiring by larceny lies in the *intention* with which the *owner* parts with the property. If the owner, in parting with the property, intends to invest the accused with the title as well as the possession, the latter has committed the crime of obtaining by false pretense. But if the intention of the owner is to invest the accused with the mere possession of the property, and the latter with the requisite intent receives it and converts it to his own use, it is larceny. Michie's Jurisprudence Vol. 8, False Pretenses & Cheats, § 2, p. 463. See also, Loomis v. People, 67 N.Y. 322, 23 Am.Rep. 123 (1876).

■ The Court has no reason to doubt that these common law principles grounding transfer of ownership in intent remain viable in Virginia. Under such principles the Court cannot find that title to the property which Mrs. Dennis gave to Earnest Carl Forbes passed to him. By stipulation, "[a]t all relevant times Mrs. Dennis intended to give Forbes only the right to possess said funds so that such funds could be transmitted to a third party." The money was "entrusted" for specific purposes with no intention that any interest pass to the person to whom it was entrusted. The money belonged to Mrs. Dennis and would belong to her until delivered to the persons for whom it was intended. It is the clear import of the stipulation that Forbes was to serve merely as conduit of funds. The fact that the intended donee did not exist

does not serve to transfer the intent to give to another party. The intended transfer of title is a nullity. Forbes' appropriation of the money to his own use is simply conversion. The property which is the subject of this suit belongs to Mrs. Dennis, not Mr. Forbes, and a lien under § 7246 for the purposes of satisfying Mr. Forbes' tax liability cannot attach. While a transaction of the nature presented by this case might otherwise be fraught with uncertainty concerning who intended what, the stipulation is unambiguous that the intent required to transfer title to Forbes was, for purposes of this case, lacking.[1] The Court will not go behind that stipulation.

■ Defendant attempts to distinguish between the money and other property recovered and the automobiles recovered which under the terms of the stipulation had been purchased with money obtained from plaintiff. Although there is nothing inherent in the transaction which would give a thief better title to goods received in exchange for stolen property than he had in the stolen property itself, defendant bases his claim upon the fact that for some purposes the certificate of title of a motor vehicle is considered by the Virginia Supreme Court as "conclusive evidence of ownership." See Travelers Indemnity Co. v. Nationwide Mutual Insurance Co., 227 F.Supp. 958 (W.D.Va. 1964). Be that as it may, in this case any title to the cars residing in Forbes can be considered no more than bare legal title since it has come "to be perhaps universally recognized that a constructive trust will arise when stolen or embezzled funds are used to purchase other property." Annotation, 38 A.L.R.3d 1354, 1359. See also, Restatement of Restitution, § 202. Thus, while a presumption of full ownership may arise

from the certificate of title in matters relating to subsequent bona fide purchasers or insurance coverage, ownership in the present context can be considered only such ownership as a trustee has of trust properties, i. e., bare legal title. The vehicles did not "belong" to Forbes within the meaning of § 7426.

For the reasons stated above, plaintiff's motion for summary judgment will be granted.

---

1. At best, what emerged under the facts as stipulated was a constructive trust in which Forbes was given possession of money or bare legal title to it, the use of which was specifically delimited by Mrs. Dennis. Upon any substantial deviation from the purposes of that trust, the proceeds reverted to plaintiff. Money held in trust, whether constructive or actual, cannot be said to "belong" to the trustee within the meaning of § 7246. Thus, even under this interpretation, the government's lien would fail.