ATLAS, INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. A77–1066.

United States District Court,
D. North Dakota,
Southwestern Division.

Nov. 20, 1978.

Patrick W. Durick, Bismarck, N. D., for plaintiff.

H. Gary Annear, Fargo, N. D., for defendant.

## MEMORANDUM OF DECISION AND ORDER

VanSICKLE, District Judge.

This is a quiet title action brought by Atlas, Inc. against the United States. Trial was had before the Court on October 16, 1978. Atlas claims title to the former residence of Arlene Dohn, located at 1714 Avenue "D" East, Bismarck, North Dakota, by virtue of a judgment of the Burleigh County District Court, dated February 22, 1977. The judgment of the Burleigh County District Court provides that Arlene Dohn held the subject property in trust for Atlas and the judgment conveyed Arlene Dohn's interest in the property to Atlas.

The United States claims an interest in Mrs. Dohn's former residence by virtue of a lien for unpaid taxes. The Notice of Federal Tax Lien was filed in the Burleigh County Register of Deeds' office on December 1, 1976.

The issues presented are whether the tax lien of the United States is void, whether it is an encumbrance on the subject property; and if not, what are the relative interests of the parties in the subject property.

On or about October 9, 1972, Mrs. Arlene Dohn, a bookkeeper for Atlas, Inc. began embezzling funds from Atlas. She continued to embezzle funds until her activities were discovered in October of 1975.

During the period October 9, 1972 to October 10, 1975, Mrs. Dohn embezzled a total of $390,723.48 from Atlas. The funds were obtained by altering checks drawn on Atlas and depositing them in the personal checking account of Mrs. Dohn in the Dakota Northwestern Bank, Bismarck, North Dakota.

When Mrs. Dohn's activities were discovered, a lawsuit was started against her by Atlas in the Burleigh County District Court. Atlas prayed for judgment against Mrs. Dohn in the total of the embezzlement and further requested that a constructive trust be imposed on certain properties she had purchased through the use of embezzled funds. Among the properties Atlas sought to have a constructive trust imposed upon was the personal residence of Arlene Dohn. In conjunction with the action against Mrs. Dohn, a *lis pendens* was filed on October 12, 1975.

The house Mrs. Dohn lived in at the time of her employment by Atlas was purchased by her in December of 1967 for $19,700. She paid $2,400 down and financed the balance with the First Federal Savings and Loan Association, Bismarck, North Dakota. Mrs. Dohn made payments of $160 per month on the home and on September 27, 1972, the payment date immediately preceding her first embezzlement of funds, the balance due and owing on her house was $15,882.67. During the period she was embezzling funds from Atlas, Mrs. Dohn continued to make her monthly payments of $160 per month. On October 8, 1975, Mrs. Dohn paid to First Federal a personal check in the amount of $13,931.93. Of this amount, $13,849.35 went to pay off the principal due on the house at the time.

During the period she was embezzling funds from Atlas, Mrs. Dohn made improvements to her residence including an expenditure of $5,465.51 for a cement patio and fence. She paid for these improvements out of her personal checking account with the Dakota Northwestern Bank.

On December 1, 1976, a date subsequent to the filing of the *lis pendens*, the Internal Revenue Service filed with the Burleigh County Register of Deeds a Notice of Federal Tax Lien under the Internal Revenue Laws. The amount of the lien was $220,-757.49 and the tax liability arose because the funds that Mrs. Dohn embezzled from Atlas, Inc. were not declared by her as income.

On February 22, 1977, the District Court of Burleigh County entered judgment for Atlas and against Arlene Dohn for the sum of $289,546.70, and for a constructive trust on, among other properties, the home which is the subject matter of this lawsuit.

■ Both parties recognize that the money illegally obtained from Atlas by Mrs. Dohn was includable within her "gross income" and taxable to her in the years it was received. *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). The question before the Court is whether specific property which may have been partially paid for out of the embezzled funds can be levied upon by the government for the purpose of satisfying the tax obligation arising from the embezzlement.

■ The federal tax lien arises under Title 26 U.S.C. § 6321 which provides as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Aug. 16, 1954, c. 736, 68A Stat. 779."

The general tax lien of the government, which arises as soon as taxes are assessed and which attaches to all property and rights to property of the tax debtor, prevails against all other unperfected liens with a few statutory exceptions, including judgment lien creditors. Whenever the tax lien of the United States competes with that of the judgment lien creditor, it must be determined whether the United States filed notice of its lien in the proper place

prior to the time the competing lienor established his status as a judgment lien creditor. 26 U.S.C. § 6323. The tax lien here was properly filed before the judgment of the Burleigh County District Court. Atlas, however, contends that, under North Dakota law, their filing of a notice of *lis pendens* in connection with their suit to impress a constructive trust on the property gives their equitable lien priority over the federal tax lien.[1] I do not agree.

■ Atlas fails to recognize that it is a matter of federal and not state law as to when a lien has acquired sufficient substance and has become so perfected as to defeat a federal tax lien. *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). For a lien to be sufficiently established to defeat a federal tax lien, the identity of the lienor, the property subject to the lien, and the amount of the lien must be established. In this case, it is clear that the amount of the lien was not established at the time of the filing of the federal tax lien. Whether the equitable lien existed in this case was contingent upon Atlas' proof in its suit. Until it established that the embezzled funds were used to purchase some or all of the property involved, and until it received a judgment from the Burleigh County District Court impressing a lien on such property, its lien was not perfected to the extent required by federal law so that it will defeat a valid federal tax lien.

■ In *United States v. Pioneer American Ins. Co., supra,* the Supreme Court dealt with a mortgage which was superior to the federal tax lien. The mortgage provided for reasonable attorney's fees, and under state law the right to attorney's fees was enforceable at the time of default, which was prior to the filing of the federal tax lien, and the suit seeking such attorney's fees was also filed prior to the filing of the federal tax lien. The Court held that under federal law, the claim for attorney's fees was not so perfected as to defeat the federal tax lien because the amount of the attorney's fees was not finally fixed in amount until after the federal tax lien was filed. Accordingly, the Court held that the mortgage was superior to the tax lien as to principal and interest but not as to attorney's fees. In *City of Dallas v. United States*, 369 F.2d 645 (5th Cir. 1966), the City of Dallas had a city tax lien pursuant to a city ordinance before the filing of the federal tax lien; however, the exact amount of the lien was unknown until after the filing of the federal tax lien. The court held that since the city lien was not certain in amount on the dates the federal liens were perfected, it was inchoate and inferior to the federal lien. In *United States v. Morrison*, 247 F.2d 285 (5th Cir. 1957), a vendor of realty filed a suit to impress certain property with an equitable vendor's lien for the unpaid purchase price and contemporaneously filed a notice of *lis pendens.* According to Texas law, the equitable lien came into being at the time of the conveyance, and this predated the federal tax lien as did the filing of the suit to impress the lien. The court noted that the lien's standing under Texas law was not enough, but that the lien must satisfy federal standards. The court discussed the effect of the filing of the notice of *lis pendens* as follows:

"Since the Vendor, asserting here his equitable vendor's lien, has neither the status of a 'mortgagee, pledgee, purchaser,

---

1. North Dakota Century Code Section 28–05–07 deals with the effect of filing a notice of *lis pendens.* That section provides in relevant part as follows:

"In a civil action in a district court affecting the title to real property, the plaintiff, at the time of filing the complaint . . . may file for record with the register of deeds of each county in which the real property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the real property affected. From the time of filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer with notice and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action. . . . . "

or judgment creditor,' the right of the Government to the tax lien (footnote omitted) under Section 6321 is not affected by the race between the Notice of Tax Lien . . . and the Vendor's *lis pendens* for recordation (footnote omitted) under Section 6323, and the question of priority must be determined by *other* considerations . . . the principal factor being that the lien which is first in time is first in right, . . . if, but only if, the one first in time is *specific* and *perfected* in the Federal sense." 247 F.2d at 287.

Similarly, in this case, until there was a judgment impressing a trust on specific property in favor of Atlas, under the federal test to be applied, the equitable lien was contingent and cannot, therefore, take precedence over the previously filed federal tax lien, and this is so even though Atlas filed its notice of *lis pendens* before the federal tax lien was filed.

 Since Atlas' lien was not certain in amount on the date the federal tax lien was perfected, it was inchoate and inferior to the federal tax lien. Atlas, however, is not out altogether. Although federal law determines whether a state lien is sufficiently choate so as to defeat a federal tax lien, it must first be determined whether the taxpayer had property or a right to property to which the federal tax lien could attach, and this is a matter of state law. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

The Supreme Court, in *Aquilino*, stated the rule that state law determines the question of the taxpayer's property rights to which a federal tax lien can attach as follows:

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by the statute.'" 363 U.S. at 512–513, 80 S.Ct. at 1280.

*See also United States v. Durham Lumber Co.*, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960). The import of this is that a federal tax lien can only attach to a property interest of the taxpayer which exists under state law, and if the taxpayer does not own the property or have rights to the property under state law, then the federal tax lien could not attach to such property, and, thus, the federal tax lien could not take precedence over a third person's property or right to property in the subject matter of the action.

In *Aquilino*, the Court dealt with a situation where subcontractors claimed a right to monies owed the contractor by the owner. The government sought to enforce a tax lien on all property of the contractor. The Court noted that such claims of the subcontractors were not choate but held that if, under the applicable New York law, the contractor were found to hold the monies in trust for the subcontractors, then the contractor would not have such a property interest that the federal tax lien could attach. In *Durham*, the Court also held that where a general contractor did not have a property interest in the total amount due under a construction contract, the federal tax lien could attach only to that amount of funds which remain unpaid after the owners have deducted a sum sufficient to pay the subcontractors. In *Dennis v. United States*, 372 F.Supp. 563 (E.D.Va. 1974), the district court held that a federal tax lien could not attach to monies held by the taxpayer which had been embezzled from the owner since under the common law, no title passed to the embezzler, and, thus, the taxpayer did not have a right of ownership to which the tax lien could attach.

 It is a general rule of common law that no beneficial ownership is acquired by an embezzler, but that such ownership remains in the victim, who is the beneficial

owner of a constructive trust which is imposed on such monies or property purchased with such money. *See* 38 A.L.R.3d 1354. I find this to be the rule in North Dakota. Under Section 59–01–06 of the North Dakota Century Code,[2] one who obtains property by a wrongful act holds the property as an implied trustee for the one who is entitled to the property. The wrongdoer obtains no more than naked legal title to the property and holds it as a trustee for the benefit of the party who should have it. *See Redman v. Biewer*, 78 N.D. 120, 48 N.W.2d 372 (1951); *Hyland v. Tousley*, 67 N.D. 612, 275 N.W. 340 (1937); *Arntson v. First National Bank of Sheldon*, 39 N.D. 408, 167 N.W. 760 (1918); *Widman v. Kellogg*, 22 N.D. 396, 133 N.W. 1020 (1911). Generally, where a constructive trustee has invested such funds or has purchased other property, the real owner can follow it wherever it can be traced. *See* Restatement of Restitution § 202 (1936).

▇▇▇▇ Since it is undisputed that Mrs. Dohn embezzled approximately $390,000 from Atlas, it is clear that she obtained no property rights in these funds and that she obtained no rights to any property which was purchased with these embezzled funds but would instead hold the same as constructive trustee for Atlas, who is the rightful owner. Since a federal tax lien can attach only to a property interest of the taxpayer which exists under state law, it is clear that the federal tax liens now in issue could not attach to that part of the subject property that was purchased with proceeds from the embezzlement.

Obviously, any equity that Mrs. Dohn had in her house prior to the time of the embezzlement would not have been purchased with proceeds from the embezzlement. Thus, the $2,400 Mrs. Dohn had paid down and the $1,417.33 she had paid toward the principal before the embezzlement started would be a property interest to which the federal tax lien could attach. After Mrs. Dohn began embezzling funds from Atlas, she continued to make her monthly payments of $160 toward the mortgage. Mrs. Dohn also continued to work and receive a salary. It is my conclusion from viewing the evidence that these monthly mortgage payments were paid from her salary rather than from the embezzled funds. The regularity of the payments both before and after the embezzlement lead me to conclude that the mortgage payments of $160 per month came from Mrs. Dohn's salary. Thus, any amount paid toward the principal during this time would also be a property interest of Mrs. Dohn to which the federal tax lien could attach. This amounted to $2,033.32. However, when Mrs. Dohn gave First Federal her personal check of $13,931.93 to pay off the principal due on the house, she was no longer working with her own funds. Her salary itself would not allow for such a large expenditure. No explanation, other than the embezzlement, has been given to account for this sum, so I conclude that the remainder of the principal mortgage on the house was paid for with monies embezzled from Atlas. I also conclude that the expensive improvements conducted at the residence after the beginning of the embezzlement were paid for out of the embezzled funds, Mrs. Dohn obtained no property rights in these. Since the federal tax lien can attach only to a property interest of the taxpayer, it could not attach to that part of the residence paid for with proceeds from the embezzlement.

Therefore, for the reasons above stated, I find that the United States is entitled, with respect to its federal tax lien, to priority over the judgment lien of Atlas, Inc., in the sum of $5,850.65. As to the remainder of the value of the residence, the federal tax lien does not attach.

Counsel for the Plaintiff will prepare and submit appropriate form of judgment in conformity herewith.

---

**2.** North Dakota Century Code Section 59–01–06 deals with the creation of implied trusts and provides in relevant part as follows:

"2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other or better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;"

This memorandum is deemed to comply with the provisions of Rule 52, Federal Rules of Civil Procedure.