**In the Matter of Robert Howard HIGGINS, Bankrupt.**

**No. BK68–139S.**

United States District Court
D. South Dakota, S. D.
Sept. 18, 1969.

Thomas F. Martin, State's Atty., Brookings County, S. D., for Brookings County.

Joe W. Cadwell, of Braithwaite, Cadwell & Braithwaite, Sioux Falls, S. D., for Trustee.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The States Attorney for Brookings County, South Dakota, has petitioned this court for review of an order of the Referee in Bankruptcy which held that the personal property tax lien of the county was inferior to the costs and expenses of administration of the bankrupt estate, there being no wage claims. The question presented is whether the tax lien was valid and enforceable against the trustee as a secured claim entitled to payment from the proceeds of the personal property prior to division of assets among the creditors holding priority status.

The trustee and petitioner have agreed to the following statement of facts per stipulation dated April 24, 1969. On or about July 12, 1968, the bankrupt, Robert Howard Higgins, presented to the Brookings County Treasurer a check in the amount of $957.40 for payment of delinquent personal property taxes for the years 1966 and 1967. Following deposit the check was returned unpaid by the bank for insufficient funds. On August 15, 1968, the delinquent tax collector for Brookings County duly seized the personal business property of Higgins and on the same date executed a distress warrant and served a copy of the warrant with the notice of levy as provided by

law. On the same date, August 15, 1968, the tax collector duly served a notice of sale that the property levied upon would be sold at public auction on September 9, 1968.

On August 30, 1968, Higgins filed a voluntary petition in bankruptcy. On September 4, 1968, Brookings County surrendered possession of the property previously seized to the Northwestern National Bank of Sioux Falls, Brookings Branch, which held a first mortgage on the property. The surrender was made pursuant to an agreement that the delinquent personal property taxes were to be paid prior to the mortgage from the proceeds of a public auction sale of the property. On September 23, 1968, the first meeting of creditors was held in the courtroom in the Federal Building, Sioux Falls, South Dakota. On October 4, 1968, the Brookings County Treasurer filed with the Referee a proof of claim in bankruptcy for delinquent personal property taxes owed to the county. The proof of claim set forth the fact that the claim was entitled to priority as provided by section 64(a) and section 67 of the Bankruptcy Act, as amended, 11 U.S.C. §§ 104(a) and 107. Thereafter the trustee took possession of the property and sold it.

On March 13, 1969, the trustee notified the county that a hearing would be held on March 24, 1969, at which time the trustee would present for approval an agreement between the trustee and the Northwestern National Bank whereby the Bank had agreed to accept $4000 plus $225 previously collected by the Bank in settlement of its first mortgage claim of approximately $4500. Brookings County objected to the proposed agreement between the trustee and the Bank on the ground that the delinquent personal property taxes due and owing to the county were entitled to priority as provided by sections 64(a) and 67 of the Bankruptcy Act, as amended, 11 U.S.C. §§ 104(a) and 107. The referee entered an order on March 26, 1969, denying payment of the tax liens before the mortgage. In accordance with section 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c), Brookings County filed with the Referee a petition for review of the order denying secured claim status to the tax lien and requested that this court determine the character of the county tax claim for the years 1966 and 1967 and its order of payment.

■ The determination of the order of payment of the tax claim is based upon interrelated principles of state and federal law. State law determines the degree of perfection of the tax lien; federal bankruptcy law determines whether the tax lien is to be accorded secured, priority or unsecured status in payment from the proceeds of the bankrupt estate. *Cf.* In re Regal Petroleum Products Company, 287 F.Supp. 458 (E.D. Pa.1968); In re Chesterfield Developers, Inc., 285 F.Supp. 689 (S.D.N.Y.1968).

Critical to the resolution of the present controversy is an interpretation of the 1966 amendments to sections 64(a), 67 (b) and (c), and 70(c) of the Bankruptcy Act, 11 U.S.C. §§ 104(a), 107(b) and (c), and 110(c), as amended July 5, 1966, P.L. 89–495, sections 3, 4, 5; 80 Stat. 268–271.[1] Since there are few

I. Section 67(b), (c) (1) (A) & (B), and (c) (3):

"(b) The provisions of section 96 of this title to the contrary notwithstanding and except as otherwise provided in subdivision (c) of this section, statutory liens * * * for taxes * * * to any State or any subdivision thereof, created or recognized by the laws of the United States or any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the pe-

tition initiating a proceeding under this title by or against him.

"(c) (1) The following liens shall be invalid against the trustee:

(A) every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor;

(B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the

cases interpreting the amendments, an examination of the legislative history of the 1966 amendments is particularly helpful. The Reports of the Committees on the Judiciary of the Senate and House of Representatives indicates the congressional intent in enacting the amendments:

"[T]he Bankruptcy Act has traditionally recognized that a lien is a valid property right which must be satisfied out of the assets to which it attaches before any part of those assets becomes available for distribution to unsecured creditors. Among unsecured creditors, the act established an order of payment which favors the costs of administering the estate, wages, taxes, and rent over general creditors.

\*　\*　\*　\*　\*　\*

"To overcome the problems created by subdivision c of section 67, section 6 of this bill completely revises that subdivision. New standards are established for the invalidation of statutory liens and the circuity potential in the present section is eliminated.

Since the effect of section 67c is limited to statutory liens and does not include consensual liens, it is essential that the term 'statutory lien' be clearly defined. The Bankruptcy Act nowhere defines that term. Therefore, section 1 of the bill provides that a statutory lien shall mean a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security, whether or not such lien is also provided by or is also dependent upon statute, and whether or not the agreement or lien is made fully effective by statute [enacted as 11 U.S.C. § 1(29a)].

"[O]ne of the major objectives of the Chandler Act was to overcome the distortion of the Federal order of distribution by the creation of spurious statutory liens. To upset these liens which were in reality priorities, \* \* statutory liens on personal property, unaccompanied by possession, were postponed to wages and costs of administration, \* \* \*. However, a recent reexamination of State lien statutes has shown that neither the standard of possession nor the distinction between real and personal prop-

---

rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: *Provided*, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision (c) of section 110 of this title and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such law: *And provided further*, That if applicable lien law requires a lien valid against the trustee under section 110(c) of this title to be perfected by the seizure of property, it shall instead be perfected as permitted by this subdivision by filing notice thereof with the court;

\*　\*　\*　\*　\*

"(c) (3) Every tax lien on personal property not accompanied by possession shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of this title. \* \* \*."
Section 70(c):

"(c) The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, and (2) a creditor who on the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists, \* \* \*."

erty is an entirely satisfactory criterion. Some liens which are genuine property rights are affected and others which were essentially State-created priorities escape.

"To insure the supremacy of the order of distribution provided in the Bankruptcy Act insofar as it is consistent with the continued recognition of genuine lien interests, this bill would eliminate lack of possession of personal property as the standard for upsetting liens and would instead invalidate as against the trustee every lien which falls within any of the following categories:

(1) Every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property or upon execution against his property levied at the instance of one other than the lienor [enacted as 11 U.S.C. §§ 107(c) (1)(A)].

(2) Every statutory lien not perfected at the date of bankruptcy as against a subsequent bona fide purchaser from the debtor on that date [enacted as 11 U.S.C. § 107(c)(1) (B)].

\* \* \* \* \* \*

"The first of these provisions strikes at liens which merely determine the order of distribution upon insolvency or liquidation. This kind of lien is not a specific property right which may be asserted independently of a general distribution and regardless of the transfer of the property. This is clearly a disguised priority.

"The second provision strikes at a lien which is so tenuous that it can be defeated by transfer to a bona fide purchaser. The holders of such liens have reason to know that their security is extremely vulnerable. It would seem that if, apart from bankruptcy, a lien is not good against a bona fide purchaser, then it should not be valid against the trustee. However, it

should be noted that under the proviso to the new section 67c(1)(B), the substance of which is now found in section 67b, a lien that is valid against the creditors described in section 70c (and therefore against the trustee) may thereafter be perfected against bona fide purchasers and therefore against the trustee by filing notice with the bankruptcy court.

\* \* \* \* \* \*

"Although new section 67c establishes more effective standards for the treatment of statutory liens, the new section 67c(1)(B), which permits perfection by notice filing rather than possession, may nevertheless result in the consuming of assets otherwise available for paying administrative costs and wages. \* \* \* [I]f the policy of the Chandler Act to protect the costs of administration and wages is to be given effect, it is necessary to postpone to the costs of administration and wages at least those tax liens which are on personal property and are unaccompanied by possession.

" \* \* \* The amendment to section 67c in this bill retains the provision of existing law which postpones a tax lien on personal property not accompanied by possession to the debts specified in clauses (1) and (2) of subdivision (a) of section 64.

\* \* \* \* \* \*

"In respect to the relation between new sections 67c(1) and 67c(3), it is the intention of the committee that a statutory tax lien on personal property not accompanied by possession shall first be tested by the standards of section 67c(1). Section 67c(3) is then to be applied to those liens which have not been invalidated by section 67c (1)." Senate Report No. 1159, 2 U.S. Code Cong. and Adm. News 2456–2464, 89th Congress (Second Sess. 1966).

■ Section 67(b) provides that statutory liens [2] for taxes arising within four months prior to the filing of the petition will not be invalid against the trustee if the lien satisfies the requirements of section 67(c). 11 U.S.C. sections 107(b) and (c). The South Dakota law concerning perfection of tax liens is contained in SDCL Ch. 10–22 (1967).[3]

A tax lien which arises under the provisions of Chapter 10–22 meets the criteria of statutory liens which are preserved under section 67(b) in that the lien arises by operation of law upon specified circumstances—non-payment of taxes—and not by agreement of the parties. 11 U.S.C. §§ 1(29a) and 107(b).

The tests in sections 67(c)(1)(A) and (B) and 67(c)(3) must be applied to the county's tax claim in the present situation to determine the status of the claim under the Bankruptcy Act. When viewed in light of the tests of section 67(c)(1)(A), as set forth in the Senate Report, *supra,* it is clear that the South Dakota tax lien provisions do not establish a disguised distribution in bankruptcy. The lien does not first become

2. Section 1(29a):
" 'Statutory lien' shall mean a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security, whether or not such lien is also provided by or is also dependent upon statute and whether or not the agreement or lien is made fully effective by statute."

3. The following sections of SDCL Title 10 (1967) are applicable:
10–19–3: All taxes assessed upon personal property within this state shall be a first lien on all personal property of the person against whom personal taxes are assessed, from and after January first in each year.
10–22–8: The county treasurer may issue a distress warrant against any person whose personal property taxes are delinquent at any time and he shall issue a distress warrant against any person whose personal property taxes are delinquent when requested by any county commissioner or sheriff of the county.
10–22–10: The county treasurer shall issue and deliver the distress warrant in duplicate to the sheriff. Such warrant shall constitute the sheriff's authority and he shall immediately proceed to execute the same, and collect the tax by seizure of personal property of such person to an amount sufficient to pay such tax, with accrued penalty and interest, if any, and all accruing costs, wherever the same may be found in the county.
10–22–16: The warrant shall be executed by service of a copy of the same together with a notice of the levy upon the owner of the property, * * *.
10–22–17: If the property consists of bulky materials or property which cannot be practicably or conveniently moved, the sheriff may hold the same and the sale thereof at the place where it is located, and in such cases in addition to the service and notice specified in § 10–22–16, he shall file a copy of his notice of levy in the office of the register of deeds of the county, stating among other things the name of the person against whom the distress warrant was issued, the description of the property, the amount of the tax claim, and a description of the real estate where the property is located.
10–22–18: The sheriff shall forthwith fix a time and place for sale of the property seized, which time must be not less than ten nor more than thirty days after the seizure, and which place may be at any public place within the county * * *.
10–22–22: The sheriff may adjourn the sale from time to time, not exceeding three days, and shall adjourn at least once if there are no bidders. The adjournment shall be made by public announcement at the time and place of sale and by posting notice thereof at such time and place.
10–22–34: The board of county commissioners of any county may, in its discretion by resolution made and entered, authorize the county treasurer to appoint a special deputy county treasurer to serve at the pleasure of the board of county commissioners and to be known as the delinquent tax collector, and whose duty shall be to collect delinquent personal property taxes as provided in sections 10–22–36 to 10–22–39, inclusive.
10–22–36: Such tax collector shall have authority to institute and carry on any proceeding under the laws of this state for the collection of delinquent personal property taxes, and for this purpose he shall have the same power and authority as is given by law to the sheriff of the county acting under a distress warrant.

effective upon the insolvency of the debtor or upon distribution or liquidation of his property; nor does the lien become effective only after execution of a claim against the property by another creditor. The lien can be established and enforced without reference to the financial condition of the debtor or the acts of other creditors. SDCL sections 10–19–3, 10–22–8 (1967); First National Bank of Valentine, Nebraska v. Peterson, 67 S.D. 400, 293 N.W. 530 (1940); Minneapolis Threshing Machine Co. v. Roberts, 34 S.D. 498, 149 N.W. 163, L.R.A.1915D, 886 (1914). *Cf.* In re Trahan, 283 F. Supp. 620, 625 (W.D.La. 1968).

A more difficult question is presented in determining whether on the date of bankruptcy Brookings County had perfected its tax lien so as to be enforceable against a bona fide purchaser as required by section 67(c)(1)(B), 11 U.S.C. § 107(c)(1)(B). The 1966 amendment to section 67(c)(1)(B) has been explained as follows:

"Clause (B) requires perfection of the lien and establishes, essentially, a bona fide purchaser test to determine perfection, although as will be discussed it may, in effect, provide more for a judgment lien creditor test. This test states, first of all, that for a statutory lien to be valid against the trustee it must be perfected or enforceable against one acquiring the rights of a bona fide purchaser, whether or not one actually exists, at the date of bankruptcy. What the rights are of a bona fide purchaser and how a statutory lien is perfected against such a purchaser are matters left for determination to state or federal lien law.

"For the purposes of testing statutory liens under this provision, the trustee is thus given the status of a hypothetical bona fide purchaser and he acquires that status as of the date of the filing of the bankruptcy petition. The position of the lien is to be determined 'at the date of bank-ruptcy' which with reference to time, means the date when the petition is filed; * * * It is clear, therefore, that *the enforceability of the statutory lien depends upon its state of perfection as of the date the petition is filed. Have the necessary steps been taken, by that date, to make the lien enforceable against a bona fide purchaser? That is the question to determine its validity.*

"A saving provision is included in clause (B) by the first proviso which permits perfection after the date of bankruptcy in some instances. This is where the lien has not yet been perfected to be enforceable against a bona fide purchaser but time is still permitted by state law for performing that particular act of perfection. In order to avail itself of this saving provision, however, the proviso requires that the lien be valid against the trustee under section 70c at the date of bankruptcy. For example, if state law creates, under prescribed circumstances, a statutory lien which is enforceable on particular property without recordation or any other act against judicial lien creditors but requires public filing, possession, levy, commencement of a legal proceeding or some other act for it to be enforceable against bona fide purchasers, a case involving the first proviso could be presented. Assuming that the act of perfection must be performed within thirty days after the lien arises but bankruptcy intervenes before the expiration of that time, the lienor has whatever time remains to perfect his status as a protected statutory lienor. It may be argued, however, that if that act is accomplished after the thirty days and is effective against bona fide purchasers thereafter arising, the lienor is not limited by the thirty-day period. The first proviso is not clear in this respect and it may be read to open the door to perfection at any time after bankruptcy.

&ast; &ast; &ast; &ast; &ast; &ast;

"If the required act of perfection is seizure of the property, the second proviso substitutes notice filing with the bankruptcy court. This is merely a carryover from former section 67b.

"It may be argued that clause (B) establishes more of a judgment lien creditor test than a bona fide purchaser test. Actually, it probably includes a little of both. Basically it is a bona fide purchaser test. This is the first inquiry to be made by the trustee. *If it is determined that the particular lien was enforceable against a bona fide purchaser at the date of bankruptcy, his inquiry may cease because the lien is valid against him.*" 4 Collier on Bankruptcy § 67. 281 (2.2) 422–24. (emphasis added). (2.2) at 422–24.

In the present situation, the tax lien was perfected in accordance with the statutory requirements of SDCL Ch. 10–22 (1967). The delinquent tax collector issued the distress warrant, as required by SDCL 10–22–8, which was served with the notice of levy upon the debtor on August 15, 1968, pursuant to SDCL 10–22–16. Inasmuch as the personal property was reduced to possession by the tax collector, it was unnecessary to file a copy of the levy. SDCL 10–22–17. The notice of sale was given on August 15, 1968, and the date was set for September 9, 1968, in accordance with the provisions of SDCL 10–22–18. It is apparent, therefore, that when the petition was filed on August 30, 1968, Brookings County had taken all steps prescribed by statute to perfect its tax lien against a bona fide purchaser. The identity of the lienor, the property subject to the lien, and the amount of the lien had been established prior to the date of bankruptcy. United States v. Equitable Life Assurance Society of the United States, 384 U.S. 323, 327–328, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); United States v. City of New Britain, Conn., 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. First Na-

tional Bank & Trust Company of Fargo, North Dakota, 386 F.2d 646, 647 (8th Cir. 1967).

■ Having concluded that the tax claim was valid and enforceable against a bona fide purchaser at the date of bankruptcy, and therefore valid against the trustee, the possession test of section 67(c)(3), 11 U.S.C. § 107(c)(3), must be satisfied. Senate Report No. 1159, 2 U.S. Code Cong. and Adm. News, *supra;* 4 Collier, *supra* at sec. 67.281 (2.-21). In this case, the test was clearly satisfied by the act of the tax collector in seizing the personal property on August 15, 1968, prior to the date of bankruptcy.

■ The trustee contends that Brookings County lost its perfected tax lien when it surrendered the property to the Bank under the agreement for public sale because the County had not complied with the statutory requirements for tax sale, thereby contravening the first proviso of section 67(c)(1)(B). However, the amendments to this section do not appear to have changed the rule that it is the date of bankruptcy on which the validity of the lien is tested against the trustee; events subsequent to that date are immaterial. Goggin v. Division of Labor Law Enforcement of California, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543 (1949); In re Ann Arbor Brewing Co., 110 F.Supp. 111 (E.D.Mich.1951); 4 Collier, *supra*, at sec. 67.281(2.2). The first proviso of section 67(c)(1)(B) is intended to protect the lien claimant who has perfected his claim against the creditors of section 70(c) by enabling him to perfect his lien against a subsequent bona fide purchaser where state law provides time for additional acts which are necessary as a *condition precedent* to such ultimate perfection. A tax lien which is enforceable against the creditors of section 70(c) at the date of bankruptcy is not a secret lien which the amendments seek to invalidate. The surrender of the property to the Bank and

the subsequent surrender to the trustee do not invalidate the lien against the trustee.

The final contention of the trustee is that Brookings County waived its position as a secured creditor by indicating on the proof of claim that it held a "priority" claim rather than a "secured" claim. The trustee's argument is made despite his stipulation that the county had filed a proof of claim "setting forth the fact that said claim was entitled to priority as provided by Section 64(a) and Section 67 of the Bankruptcy Act and Acts Amendatory thereof." Where a secured claim is not claimed as such through inadvertence or in excusable ignorance of the facts and law, as the Court believes was the case in this instance, and where there is no fraudulent intent on the part of the claimant, it is within the discretion of the Court to allow the claimant to change its position to reflect the true character of its claim. In re Knox-Powell-Stockton Co., Inc., 100 F.2d 979 (9th Cir. 1939); Collier Bankruptcy Manual § 57.04(3) (Laube and Hill ed.) Accordingly, Brookings County will not be held to have waived presentment of the tax lien as a secured claim.

In view of the positions previously stated, it is the decision of this Court that the tax lien of Brookings County in the amount of $957.40 is a secured claim under sections 67(c)(1)(B) and (c)(3) of the Bankruptcy Act, 11 U.S.C. §§ 107(c)(1)(B) and (c)(3), and is to be satisfied from the proceeds of the sale of the personal property subject to the lien.

The foregoing constitutes the Court's findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure.

The record is remanded to the Referee for action consistent with this opinion.